WILLIAM MACKIE, ANDREW MILNE and ANDREW LOCKHART, appellants,

v.

WILLIAM CAIRNS, ROBERT SEDGWICK and DANIEL LORD JUNIOR, respondents.

C. a merchant in failing circumstances, executed to trustees sundry deeds of assignment of his property, in trust to pay his creditors, who were thereby ranked into classes, and were to be paid in a certain order of priority. One of the deeds declared a trust, to pay a certain sum annually, for a limited time, to C. the debtor; and all the assignments were subject to this trust. By another of the deeds any creditor who should attach any of the debtor's property was to be excluded from the benefit of the trusts, which last provision was subsequently annulled. Afterwards fearing that the assignments might not prove valid, C. confessed a judgment to the same trustees, upon the same trusts for creditors, but without the reservation in his own favor, which judgment was intended to be resorted to only in case the assignment should not be adjudged valid.

The assignments were adjudged void.

The judgment was held good

The intention to use the judgment only in case the assignment should be adjudged invalid, does not infect the judgment with the vices of the assignment.

An insolvent debtor may pay some creditors in preference to others; and may secure such payments, by a judgment in favor of trustees for such creditors.

But he can make no assignment of any part of his property, in trust for himself.

Such an assignment is void, not only for the portion reserved, but for the whole; not only in equity, but at law.

The deed which contained the clause against attaching creditors, was also void, for that cause.

This being an appeal from a circuit court in equity, the decree below was reversed; and the appellants, though they failed on other grounds, were allowed their costs out of the fund in court.

ON the 14th day of November, 1823, Philip Hone of the city of New York, merchant, filed his bill of complaint, in the court of equity, for the first circuit of the state of New York, against William Cairns and Elizabeth his wife, Baltus Moore, acting executor of Blaze Moore, deceased, Robert Sedgwick, Daniel Lord junior, William Mackie, Andrew Milne and

*1824. 26th, 27th, 28th & 29th October. 1825. 9th March.*

*Fraudulent assignment.*

48

Andrew Lockhart, for the foreclosure of two mortgages respectively executed by the said William Cairns and Elizabeth his wife, to the said Philip Hone, on the 25th of September, 1817, and 2d of November, 1818, for securing the payment of the respective sums of six thousand and twelve thousand five hundred dollars, with lawful interest, upon certain real estate of the said William Cairns, situate in Park Place, and in Courtland street, in the city of New York.

Baltus Moore, acting executor of Blaze Moore, deceased, was made a party defendant to the said bill, in respect of a previous mortgage upon a portion of the same real estate, respecting which no question was made.

Robert Sedgwick and Daniel Lord junior, were made parties defendants to the said bill, in respect of a judgment confessed to them, in the supreme court of the state of New York, by the said William Cairns, on the 1st of August, 1823, in a plea of debt, for the sum of ninety six thousand one hundred and three dollars and two cents of debt, and eighteen dollars and thirty six cents damages and costs, being an apparent lien on the equity of redemption of the said mortgaged premises.

William Mackie, Andrew Milne and Andrew Lockhart, were also made parties defendants to the said bill, in respect of a judgment recovered by them in the said supreme court against the said William Cairns, on the 8th of August, 1823, in a plea of trespass on the case upon promises, for the sum of three thousand three hundred and seventy six dollars and seventy four cents, damages and costs, being likewise an apparent lien on the equity of redemption.

On the 3d of January, 1824, William Cairns, and Elizabeth his wife, Robert Sedgwick and Daniel Lord junior, put in their joint and several answer to the said bill, in which answer they stated their desire that the mortgaged premises should be sold at an early day ; and that the said mortgages should be paid off and satisfied, and that the residue of the moneys arising from the sale should be paid to the said Robert Sedgwick and Daniel Lord junior, who by the said answer claimed the same. The grounds on which they claimed

the residue, appear by the following extracts from the said answer.

"And these defendants, William Cairns, Robert Sedgwick and Daniel Lord junior, say, that the said William Cairns did, on the 18th of April last, convey the equity of redemption, and all the right and title of the said William Cairns in the aforesaid mortgaged premises, unto these defendants, Robert Sedgwick and Daniel Lord junior, and that the deed of conveyance thereof was duly recorded in the office of register of deeds, in and for the city and county of New York, on the 31st of July last, as appears by the certificate of the said register, endorsed on the said deed of conveyance." "And the said William Cairns, Robert Sedgwick and Daniel Lord junior, for themselves say, that the said William Cairns did, on the said 18th day of April, in the year of our Lord, 1823, convey unto the said Robert Sedgwick and Daniel Lord junior, by indenture, in due form of law, all the right, title, and interest of the said William Cairns, in the aforesaid mortgaged premises, situate as aforesaid, and fronting on Park Place, formerly Robinson street, and also in the above described strip of land, conveyed by the said Josiah Sturges and Rebecca his wife, and by the said Thomas Morris, as aforesaid. And these defendants further answering, say, that the said conveyance of the said William Cairns was duly acknowledged, and recorded in the office of the register of the city and county of New York, on the 31st day of July last, as appears by the certificate of the said register endorsed thereon." "And these defendants, William Cairns, Robert Sedgwick, Daniel Lord junior and Elizabeth Cairns, further say, that they admit that the said Robert Sedgwick and Daniel Lord junior, did recover a judgment against the said William Cairns on the 1st of August last, for ninety six thousand one hundred and three dollars and two cents of debt, and for eighteen dollars and thirty six cents damages and costs, in the supreme court of judicature of this state, and that the said judgment was docketed, as stated in the said bill of complaint. And these defendants, William Cairns, Robert Sedgwick and Daniel Lord junior, further say, that the

said judgment was confesssd to the said Robert Sedgwick and Daniel Lord junior, by the said William Cairns, in perfect good faith. And that William Mackie, Andrew Milne and Andrew Lockhart, also recovered a judgment against the said William Cairns, as stated in the said bill of complaint, and that the said judgments are wholly un-cancelled and unsatisfied, so far as these defendants know or believe. But these defendants humbly submit to this honorable court, whether the said judgments are in law liens upon the said premises above mentioned, or upon the equity of redemption of the said mortgaged premises, and these defendants humbly apprehend that all the equity of redemption and interest in the said mortgaged and other premises, which the said William Cairns had, at the period of his aforesaid conveyances to these defendants, Robert Sedgwick and Daniel Lord junior, was thereby conveyed to them.

" But if this court shall otherwise determine, or the said conveyances shall for any reason prove invalid, then these defendants, William Cairns, Robert Sedgwick and Daniel Lord junior, insist that the said judgment in favor of the said Robert Sedgwick and Daniel Lord junior, is a good lien upon the equity of redemption, and upon all the inter-est of the said William Cairns in the premises."

On the 26th of December, 1823, William Mackie, An-drew Milne and Andrew Lockhart, put in under oath their joint and several answer to the said bill, of which answer the following is an extract :

" And these defendants further answering, say, that they did obtain such judgment in the supreme court of judica-ture of the people of the state of New York, against the said William Cairns, as is mentioned in the said bill, and that the same was docketed at the time for that purpose mentioned in the said bill, and that the whole money for which the said judgment was obtained as aforesaid, together with lawful interest thereon, is still justly due, and is wholly unpaid to these defendants. And that the said judgment is still in full force and vigor, in no wise reversed or satis-fied : and that these defendants caused an execution to be

issued by virtue of the said judgment against the goods and chattels, lands and tenements of the said William Cairns, directed to the sheriff of the city and county of New York, and returnable on the 16th day of August, 1823. And these defendants further answering, say, that they believe, and therefore admit, that the said Robert Sedgwick and Daniel Lord junior, recovered a judgment in the said supreme court against the said William Cairns, in a plea of debt on bond, by confession, for the sum of ninety six thousand one hundred and three dollars and two cents of debt, and eighteen dollars thirty six cents damages and costs, and that the record of the said judgment was docketed on the 1st day of August, 1823, as is set forth in the said bill. But these defendants do not know or admit that the said sum of ninety six thousand one hundred and three dollars and two cents, or any part thereof, now is or ever was justly due by the said William Cairns, to the said Robert Sedgwick and Daniel Lord junior; on the contrary, these defendants say, they are informed, and verily believe, and do therefore charge, that the said last mentioned judgment was so recovered on the confession of the said William Cairns, by collusion with the said Robert Sedgwick and Daniel Lord junior, for the express purpose of enabling the said Robert Sedgwick and Daniel Lord junior, to receive the surplus proceeds, if any there should be, of the aforesaid premises, after satisfying the amount due on the several mortgages thereon above mentioned, and to hold such surplus proceeds, or some considerable part thereof, in trust for the said William Cairns, and with intent to defeat, delay and hinder, or otherwise prevent these defendants from obtaining payment out of such surplus proceeds of the money justly due to them upon their said judgment. And these defendants further say, that they are also informed, and do verily believe, and therefore charge, that the said William Cairns did, on the 18th day of April, in the year 1823, for the like collusive and unlawful purpose, and without any valuable or legal consideration, execute a conveyance unto the said Robert Sedgwick and Daniel Lord junior, of the equity of redemption of the said mortgaged

1824.

MACKIE
v.
CAIRNS.

**1824.**

**MACKIE**
**v.**
**CAIRNS.**

premises; and these defendants humbly insist and pray, that as well the said conveyance as the said judgment so confessed as aforesaid, by the said William Cairns to the said Robert Sedgwick and Daniel Lord junior, may be decreed and adjudged to be fraudulent and void as against these defendants, bona fide judgment creditors of the said William Cairns. Of all which circumstances these defendants are advised, and humbly insist they are entitled and have a right to insist at the hearing of this cause, as fully and effectually as if the same were charged in a bill exhibited in this honorable court against the said William Cairns, Robert Sedgwick and Daniel Lord junior, by these defendants, to be relieved against the said judgment so confessed, and against the said conveyance so executed as aforesaid, by the said William Cairns to them the said Robert Sedgwick and Daniel Lord junior." " And these defendants consent to the sale of the said premises in the said bill described, and humbly pray, that the rights of these defendants may be protected and preserved; and that out of the moneys to arise from the said sale, after satisfying such incumbrances as shall be found to be honestly and equitably entitled to be first satisfied, these defendants may be paid the money due to them upon their said judgment, with all interest due, and to become due thereon, together with their costs."

**1824.**
**12th January.**

The cause coming on to be heard in the circuit court, a decree was made that the mortgaged premises be sold; that the undisputed liens should be paid in the order of priority, and that the residuary proceeds be brought into court to abide its further order.

**23d February.**

An order was made on a subsequent day, upon the petition of the present appellants, that it be referred to one of the masters of this court, " to examine into the consideration and validity of the conveyances, and of the judgment mentioned in the answer of the said William Cairns, Robert Sedgwick and Daniel Lord junior, to have been made and confessed to the said Robert Sedgwick and Daniel Lord junior, by the said William Cairns, and to ascertain and report to the court whether the same are or are not fraudulent and void,

as against the said Mackie, Milne and Lockhart; and that the said master have power to examine witnesses, and the said William Cairns, Robert Sedgwick and Daniel Lord junior, under oath, touching the same; with power also to compel the production of such books, papers and documents, as may be in the possession or power of them, the said Cairns, Sedgwick and Lord, or either of them, and he shall think ought to be produced before him, in making such examination; and that the moneys arising from the sale of the mortgaged premises, after satisfying and paying the several mortgages and costs, in and by the order of sale directed to be satisfied and paid, remain in court until the coming in of the said report, and the further order of the court."

In pursuance of that order, George Caines Esquire, a master in chancery, made a report, of which the following are extracts:

" That on the twentieth or twenty first day of March last, the said William Cairns drew a set of bills of exchange in favor of the firm of Mackie, Milne & Co. which firm is composed of the above named defendants, William Mackie, Andrew Milne and Andrew Lockhart, on Thomas M. Rogers, of New Orleans, for the sum of three thousand dollars, payable sixty days after sight, for which the said William Cairns received the full consideration, in their promissory note, which has been duly paid.

" That on the twenty fifth day of the same March, the said William Cairns, having then stopped payment, by an assignment, bearing date that day, under his hand and seal, after reciting that he was, as he apprehended, unable to pay his debts in full, and was desirous of paying his honorary creditors in the first place, and secondly all his other creditors, so far as might be in his power: and after reciting, among other things, that he had from time to time, consigned sundry goods to Otis, Dunlop & Co. of Richmond, in Virginia, on commission; and had also, at sundry times, consigned sundry goods to Thomas M. Rogers, for sale on commission; and if the said goods were all sold, and the money due therefor paid into the hands of the consignees, there would be due, as nearly

as could then be ascertained, from the said Thomas M. Rogers, the sum of twenty thousand dollars, after deducting all acceptances on such consignments : the said William Cairns did in consideration of the premises, and of one dollar, assign, transfer and set over to the said Robert Sedgwick and Daniel Lord junior, parties to the said assignment, among other things, all the goods so consigned to the said Thomas M. Rogers, then remaining unsold ; and also, all claims and demands which the said William Cairns had, or might thereafter have, against the said Thomas M. Rogers, or any other person, on account of the said goods.   And also, thirty shares in the capital stock of a certain incorporated company in the state of Connecticut, called the Byram Manufacturing Company, in trust, that the said Robert Sedgwick and Daniel Lord junior, should first pay to the said William Cairns, out of the proceeds of the assigned premises, from time to time, for the support of himself and family, after deducting all costs and reasonable charges of the said Robert Sedgwick and Daniel Lord junior, in and about the premises, at and after the rate of two thousand dollars per annum, until the said William Cairns should be discharged from his debts, under some insolvent or bankrupt law, or otherwise.   Provided, however, that such period of payment to the said William Cairns, should not endure beyond the period of four years from the date of the said assignment.   Secondly, to pay off and discharge the several debts and demands set forth in a schedule annexed, ratably and proportionally.   Thirdly, to pay the residue to the general creditors of the said William Cairns, in like manner ; of whom a schedule should be made and thereunto annexed, and become a part of those presents, as soon as might be, and which schedules were, at the time of exhibiting the said assignment to me, actually annexed.

" And I do hereby further certify and report, that in and by a certain indenture made between the aforesaid William Cairns of the first part, and the said Robert Sedgwick and Daniel Lord junior, of the second part, and bearing date the 18th day of April, 1823, after reciting that from misfortunes in business, the said William Cairns was unable to pay his debts, and was desirous of securing and paying his honorary

creditors in the first place, and secondly his other creditors:
that for the purposes aforesaid, he, on the 25th day of March
last, had made the aforesaid assignment of that date, and that
at the time of making the same, it was his intention to assign
all his real and personal estate in law or equity, for the pay-
ment of his debts as soon as his affairs could be sufficiently
investigated : that he had on the day of the date of the then
indenture, conveyed to the said Robert Sedgwick and Daniel
Lord junior, a house and lot No. 22 Park Place, subject to a
mortgage for twelve thousand five hundred dollars, with a
certain arrear of interest thereon to the complainant: and
also the interest of the said William Cairns, in the lease of
a certain house and premises, known as No. 17 Barclay
street : and also a house and lot No. 55 Courtlandt street,
subject to a mortgage for five thousand dollars to the Me-
chanic's Insurance Company, with some arrear of interest :
and also a house and lot No. 23 in Courtlandt street, subject
to two mortgages, one for seven thousand dollars, to one
Blaze Moore, with some interest due thereon, and the other
for six thousand dollars, with an arrear of interest to the afore-
said Philip Hone : also, a house and two lots of land in East
Bank street, Greenwich : and also the undivided interest of
the said William Cairns in two lots of land in Waterford, in
the county of Saratoga, held in common with Robert Chese-
brough and Rufus L. Lord : therefore he, the said William
Cairns, in further execution of his therein above intentions
expressed, and in consideration of one dollar, granted, bar-
gained, sold, assigned and transferred unto the said Robert
Sedgwick and Daniel Lord junior, and the survivor of them,
and the heirs, &c. of such survivor, all the property, estate,
promissory notes, claims and demands, in a schedule annex-
ed, marked A, in which they are particularly designated, the
same being intended to include all the property of the said
William Cairns not already conveyed for the payment of his
debts, and all other property and estate, real and personal, of
the said William Cairns, in law or equity, whatsoever and
wheresoever, together with all the books of account of the
said William Cairns, and all the right, title and interest of
the said William Cairns, in any debts, demands or unsettled

49

balances due or owing to the late firm of Cairns & Lord, or Bolles & Stanton, of which the said William Cairns was a partner, and all his interest in the books of account of the firms aforesaid, in trust to sell, collect, &c. and reduce into possession all the property mentioned in the schedule annexed or referred to, and after paying costs, &c. of so doing, and the costs of defending any suit that might be brought against the said William Cairns, for any matter or thing before the date of that indenture, and all expenses which might be incurred in procuring his discharge under any insolvent or bankrupt law, to apply the proceeds in payment,

" 1st. Of the debts mentioned in the schedule B, containing the above honorary or confidential creditors, ratably, provided sufficient proof of the debts be exhibited to the assignees, previous to any dividend notified in two public newspapers of the amounts due to such creditors, with a declaration that if any mistakes should be made in the said schedule, they should be subject to correction. Provided, however, that if any of the creditors of the said William Cairns, should have made any attachment of any property or debts, theretofore belonging to him, which he had theretofore, or by that assignment assigned for the payment of his debts, such creditor should be excluded from all interest in any dividend unless he should, previous to making the dividend which he might desire to accept, give up the attachment.

" 2dly. After paying in full the creditors in schedule B, then in trust, to divide the residue of the money arising from the assigned premises among the remaining creditors of the said William Cairns, proportionably, according to the amount of their debts, of whom a schedule should as soon as conveniently might, be made, and to that instrument annexed ; and also a schedule of the articles of furniture mentioned, or intended in the aforesaid schedule A, to be thereunto annexed, and become a part thereof.

" And I do further report, that it was by the said indenture of the 18th of April, 1823, declared that the real and leasehold estate thereby conveyed to the said Robert Sedgwick and Daniel Lord junior, were upon the trusts above therein expressed, with power to sell, &c. as they should think most

beneficial, give acquittances, &c. and that the said Robert
Sedgwick and Daniel Lord junior, for themselves, and the
survivor, &c. covenanted with the said William Cairns, &c.
for the performance of the said trusts.  And that the said
William Cairns thereby, for the purposes therein expressed,
and in consideration of one dollar, confirmed the aforesaid
assignment of the 25th of March, which was thereby, for the
purpose of carrying the said assignment into effect, agreed to
be considered, if necessary, a part of those presents ; and the
said William Cairns, did thereby, " again assign and convey
all the property therein mentioned, if the same was not al-
ready fully assigned, to the said Robert Sedgwick and Daniel
Lord junior, for the purposes in the said assignment mention-
ed," that of the 25th of March meaning.

" And I do further report, that by the said indenture of the
18th of April, it is declared, that all the premises thereby as-
signed, and the aforesaid conveyances of real and leasehold
estate should be subject to a like provision as in the aforesaid
assignment, of the 25th of March, is contained, for the main-
tenance of the said William Cairns, and that the said William
Cairns had retained about four hundred dollars, to pay some
small debts, for household and store expenses and the like, in
which, if that sum was not absorbed, the surplus should be
paid to the said assignees, and that the church pew of the
said William Cairns was not intended to be included in that
instrument.

" And I do further report, that on the 17th day of May,
1823, the said Mackie, Milne & Co. commenced a suit in
the supreme court of this state, against the said William
Cairns, on the said protested bill, in which suit the venue was
laid in the county of Kings, and an inquest regularly taken
therein, on the 23d day of July thereafter.

" And I do further report, that on the 29th day of the
same July, by a certain indenture of that date, and made be-
tween the said William Cairns, of the first part, and the said
Robert Sedgwick and Daniel Lord junior, of the second part,
after reciting the making of the aforesaid indenture of the
18th of April, which was declared to be considered as a part
of the said indenture of the 29th of July, and that the said in-

denture of the 18th of April, was on the trusts therein mentioned, and that there was contained therein the declaration, or proviso, in this my report above stated, excluding from the benefits of the said assignment all creditors of the said William Cairns, who might attach any part of his property; it was by the said indenture of the 29th of July declared, that he for divers good considerations him thereunto moving, and in consideration of one dollar, released any interest which he might have in the property mentioned or referred to in the said indenture of the 18th of April, for the benefit of all his creditors, in the same manner as if the said clause of exclusion had not been therein inserted. And it was by the said indenture of the 29th of July further declared, that the property in the said indenture of the 18th of April should be held together with the other property, of which the trusts are thereby declared, upon the same trusts as if the said clause had not been inserted therein. And that the said William Cairns, by the said indenture of the 29th of July, in all other respects confirmed the said indenture of the 18th of April, and did by that indenture of the 29th of July assign and convey the property by the indenture of the 18th of April conveyed unto the parties of the second part, in like manner, and upon the same trusts, as was and were thereby declared, except as aforesaid.

" And I do further report, that on the 1st day of August, 1823, without any previous suit therefor instituted, the said Robert Sedgwick and Daniel Lord junior, recovered a judgment by confession, in the supreme court of this state, against the said William Cairns, for ninety six thousand one hundred and three dollars and two cents of debt, and eighteen dollars and thirty six cents damages and costs; which was on the same day duly docketed, and a fieri facias thereon regularly issued.

" And I do further certify and report, that on the said first day of August, the said Robert Sedgwick and Daniel Lord junior, by a certain declaration under their hands and seals of that date, after reciting that the said William Cairns had confessed the said judgment for the purpose of securing to the honorary and confidential creditors, mentioned in a

schedule to the said declaration annexed, the payment of their          1824.
debts, as in the said schedule specified, declared, that they the
said Robert Sedgwick and Daniel Lord junior, held the said          Mackie
judgment in trust for the said creditors ; notice of which          Cairns.
judgment, and the trusts declared thereof, was given by the
said Sedgwick and Lord, on the 2d, 4th, and 5th of the same
August, to the creditors mentioned in the said schedule.

" And I do further report, that on the 8th day of the same
August, the said Mackie, Milne & Co. perfected their judg-
ment in their suit against the said William Cairns, and duly
entered and docketed the same, for three thousand three hun-
dred and seventy six dollars and seventy four cents damages
and costs, and sued out thereon a fieri facias, returnable on
the 16th day of the same August.

" And I do further report, that Isaac Kip, a deputy of the
sheriff of New York, who received the said writ of fieri facias,
at or in the sheriff's office, where it was left by the said Ro-
bert Sedgwick, testified, that after he had received the said
writ, he met the said Robert Sedgwick, who, on the said wit-
ness inquiring of him if he could tell him where he could find
any property, answered, that he knew nothing about it, by
which witness understood he had no directions to give con-
cerning it, whereupon, witness asked him whether the pro-
perty had not been assigned, to which he answered it had."

The report stated some other assignments from Cairns to
Sedgwick and Lord, not material to the present case.

The report after stating in great detail the evidence laid be-
fore the master, concluded with an opinion, of which the rea-
sons were assigned, that both the assignments, and the judg-
ment in favor of Sedgwick and Lord, were fraudulent and
void.

The cause coming on to be heard in the circuit court, the          27th May.
judge was of opinion and so decreed, that the deeds of assign-
ment were valid, but considering the question of the validity
of the judgment as immaterial, he made no decree in relation
thereto.    Costs were awarded against the present appellants.

From this decree the present appeal was brought. The          26th, 27th and
cause was argued by MR. SLOSSON and MR. HAINES for the          28th October.

1824.

MACKIE
v.
CAIRNS.

29th October.

appellants, and by MR. R. SEDGWICK and MR. H. D. SEDGWICK for the defendants.

THE COURT, being of opinion that the question whether the judgment confessed by the defendant William Cairns to the defendants Robert Sedgwick and Daniel Lord junior, is valid or not as against the appellants, is an important and material question, requiring further elucidation, in order to enable the court to decide finally thereon, ordered it to be referred to one of the masters in this court, to examine into the consideration and validity of the said judgment, and to report the facts and circumstances relating thereto, with his opinion whether the same is fraudulent; and with power to examine parties on oath and to compel the production of books, papers and documents.

This order of reference was laid before master Bolton, who, after a very minute examination of the facts and circumstances, reported his opinion that the judgment was not fraudulent.

To this report the appellants Mackie, Milne and Lockhart filed exceptions. The arguments of counsel upon these exceptions were submitted to the chancellor, in writing; of which the following are abstracts.

MR. GARR for the appellants. This judgment was confessed by Cairns, and accepted by Sedgwick and Lord, with a knowledge that the appellants had obtained a verdict, and would, on the 8th of August, be entitled to judgment; and, as confessed by Mr. Sedgwick, "for the sole and exclusive purpose of being resorted to, set up and availed of only in case the said conveyances and assignments were not valid, and not in any other case, event or contingency whatever." A fieri facias was sued out and returned nulla bona, without any endeavors whatever to have it executed, and no endeavors have since been made to enforce the judgment. Sedgwick and Lord have at all times insisted on the assignments as valid; have sold property under them, received the proceeds, and paid part of the amount to Cairns under the reservation in his favor.

The validity of the judgment depends on two things: 1st, the consideration of it; 2d, the purpose for which it was given.

It does not sufficiently appear that the judgment was for a real and bona fide debt.

But, " although a judgment be confessed upon a just debt, it may yet be fraudulent; for, though the debt be bona fide due, the judgment, quoad other creditors, may be mala fide confessed ; i. e. may be confessed with intent to delay, hinder or defraud others of their just and lawful actions ; and such intent is to be collected from the circumstances of each case." Roberts on fraud. con. 490. " Valid transactions between the parties may be void by reason of collusion or confederacy to injure a third person." By lord Mansfield, 1 Burr. 474. " If not bona fide, the circumstance of its being done for a valuable consideration, will not alone take it out of the statute." Cowp. 434.

Our supreme court have determined that where a purchaser, knowing of a judgment, purchases with a view and purpose to defeat the creditor's execution, it is " iniquitous and fraudulent, notwithstanding he may give a full price." Beals v. Guernsey, 8 John. 452.

So the statute of frauds is " for the avoiding of all feigned, covinous and fraudulent feofments, &c. judgments, and executions, devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent, to delay, hinder or defraud creditors, of their just and lawful actions, &c." 1 Rev. laws 75. 13 Eliz. c. 5. sec. 1.

Since it is lawful to prefer one creditor, in payment, if this judgment had been given merely for that object, and with intent to be enforced, perhaps it would not have been fraudulent ; but if the object was to cover the property in subservience to the fraudulent assignments, it would be void.

That this last was the intent, appears from many circumstances. Among other things the whole of the real estate was already assigned to the plaintiffs in that judgment. It was therefore useless as a lien ; and Mr. Sedgwick confesses it was only to be used, if the assignments proved invalid.

This last trust was not expressed with declaration of trust. That omission was one of the indicia of fraud enumerated in Twyne's case: another is, that it was pending a writ. Rob. on fraud. con. 577. And no creditor was a party to it, which is

very material. Ib. 431. 3 Chitty, com. law 705. citing 2 Vern. 510. 1 Chitty rep. 33. 3 Maule & Sel. 371.

It seems to be the present doctrine in England, that if a debtor defeats a pending suit by confessing a judgment, that judgment, to be valid, must be in favor of all the creditors. 3 Maule & S. 371. 4 East. 1.

The trustees, by uniformly acting under the assignments, and not under the judgment, have made an election between those different securities, and have confined themselves to the former. They have sold and paid in the character of trustees and not of judgment creditors; and to enforce the judgment against property which they themselves are controlling as trustees, would be incompatible with a discharge of the trust. 7 John. ch. 185. 1 Swanst. 359. Any decisive act of the party with knowledge of his rights and of the facts, determines his election. 3 John. ch. 416. 13 John. 54.

A fraudulent assignment, though void as against creditors, and purchasers, is binding on the parties: and Sedgwick and Lord are estopped from alleging that the real estate which is covered by the assignments, is subject to the judgment. 4 Cruise dig. 405. 529. Nels. 101. 7 John. 161. 1 Cowen 622.

It was urged before the master, that the assignees believed the assignment void, and had no intention to contravene the law. But ignorance of the law is no excuse. 2 John. ch. 51. 1 Ib. 512. 6 Ib. 166. So even in case of usury, our supreme court have decided that if excessive interest be received through ignorance of the law, the transaction is usurious. 2 Cowen 678. The law fixes the intent.

This is not at all like the case of a doubtful title, aided by a subsequent conveyance obtained to perfect it. In such case both conveyances are for the same purpose, and that purpose lawful.

If this judgment can stand, it will be in vain to decree, that a failing debtor shall not make assignments for his own benefit. All the effect of such decree will be, to introduce a little variation in the forms of the securities which are to give effect to the fraud. Let an assignment be made to secure a few favored creditors, reserving to the debtor what portion of his

property he pleases. Then let a judgment be confessed like the present, free of the trust for the debtor. In such case the favored creditors will not attack the assignment under which they claim; and the others, dare not. If this judgment shall be established, they can not.

Mr. H. D. Sedgwick and Mr. R. Sedgwick for the defendants.

The consideration of the judgment confessed to Sedgwick and Lord has never been, nor could be questioned. All the proceedings go upon the ground that it was to secure debts, the good faith and meritoriousness of which, no one ever doubted.

After the intimations which have fallen from the court, we treat the assignments for the purposes of this argument, as fraudulent. But of what nature is this fraud? There is no pretence from the amount of the reservation compared with Mr. Cairns's whole property, to presume that the reservation was a principal object. Here was nothing secret: all was open, public and avowed; and conformable to the public opinion of propriety in such cases.

It is not in human nature, that a man possessing large property should voluntarily give up all to creditors, and leave his family to public charity. He will wait for the law to do this. Or if the law denies him the liberty of reserving in an assignment, that provision for present wants which creditors would cheerfully assent to, he has only to make the provision for himself, by converting into cash funds, property enough for his future support. In this case he becomes his own judge how much is proper; a course of proceeding which is greatly to be deprecated; but it becomes a necessary consequence of denying the right to make it with the concurrence of creditors in an assignment.

If then, these assignments are fraudulent, they are only so technically. They are fraudulent in the same manner only, in which a judgment, confessed for a bona fide debt, would, under the late act, be fraudulent for want of a sufficient specification. That fraud is not such as will invalidate another title subsequently acquired to the same property. Such a judgment creditor, if doubtful of the sufficiency of his specifi-

50

cation, might well take a farther security, to serve in case of its failure.

The case of Riggs v. Murray decided that a title not morally fraudulent, but only technically so, may be confirmed by a subsequent conveyance.

This judgment was a distinct collateral security. Such securities, in the nature of the case, are only intended to be resorted to, in the event of the failure of the principal obligation.

We contend that the doctrine of constructive frauds does not apply to judgments. The citation from Roberts, rests on no authority : there is no example of the kind.

It is indeed possible to conceive that a real debt should be created, and a judgment confessed upon it, for the very purpose of defeating another impending judgment ; which is far from the present case. But in general, a junior creditor can have no right to enquire into the motives of any other bona fide creditor, for anticipating his remedy by a prior judgment. If the thing is lawful the motive is immaterial : and the inconvenience to the junior creditor is caused by the nature of the general and floating lien created by a judgment. That inconvenience admits of no remedy, except by legislation.

. A purchase may be fraudulent, though a full consideration be paid ; so may an execution, though the judgment be bona fide. But the non delivery of goods, in one case, and the delay of enforcing the process in the other, are matters of fraud to which there is nothing like, nor equivalent, in the case of a judgment.

The opinion of the court in Ludlow v. Hurd, 19 John. 218 is full to this purpose.

It is an abuse of terms to call this a secret trust. On the contrary, all was open and explicit, and full notice was given to all concerned. Neither did any of the parties intend to make use of the judgment to protect an illegal assignment. Their only intent was to comply with the law. If they have mistaken the rule of law, that is not criminality, nor fraud.

If the doctrine of election be such as the appellants allege, it goes to destroy most of the alternative, cumulative and col-

lateral remedies, which are in constant use, and which have never been questioned.

But the cases which have been adjudged afford a more precise answer to this application of the doctrine of election. Dillon v. Parker, 1 Swanst. 359, is very decisive against such application. The principle was there much discussed; and the rule deduced from that case is, that the doctrine of election applies where the right to the possession of one thing is inconsistent with the right to another thing; and it proceeds on the ground of satisfaction.

Every case under this head is confined to an election between different rights. It is when one right is inconsistent with the other: it is not a choice of remedies; though that expression is used in one of the cases where the meaning was manifestly applicable to rights only.

In all cases of election the title to both things claimed is equal until determined by the choice. But here the only possible election was between the two securities. If we could not retain both, it was not because possession under the assignment was inconsistent with the judgment, but because we attempted to protect a fraudulent claim, by a valid one.

But even if this case be one of election, there has been no such election made, as to bar our claim under the judgment. There must be a visible and irreconcileable inconsistency between the two things. Neither will it apply when parties are ignorant of these rights. See the observations of the master of the rolls, 1 Swanst. 379. 381. 370., and Sanger v. Wood, 3 John. ch. 416.

But if the doctrine of election applies at all, it is against the appellants. They, with full knowledge of the assignments, filed a bill to confirm them, and to have the deed of the 25th of March amended. They claimed under the assignees, as such.

The cestui qui trusts of the judgment may claim under it, though not parties to the declaration of trust. 4 John. ch. 529.

MR. SLOSSON for the appellants. The statute of frauds does not deprive a debtor of the power of confessing a judgment, for the purpose of giving a preference to any one bona

fide creditor, though it may defeat another.    That purpose is not illegal.    It is the unlawful intent that vitiates the judgment.

The object of this judgment was not to give any such lawful preference.    According to the original purpose, it was not to be set up or used, in any event, until the assignments should be declared fraudulent.    The assignments were still to be acted upon, until they should be so adjudged : and the acts of the trustees have pursued this intent.

This intent is, to · " delay, hinder and defraud the appel- " lants of their lawful remedy," within the terms of the statute.    For their lawful remedy is to ·reach the assigned property by virtue of their execution : but whenever they attempt to do so, the judgment in favor of the respondents is to be set up, not to obtain satisfaction thereof for the respondents, but to hinder the appellants.

None but a creditor can question the assignments ; and he, only by action.    If such action is not brought, the judgment is never set up.    If it is brought, the judgment defeats it. Of course the power of setting up the judgment for that purpose, throws a perfect protection around the illegal transaction.

Will it be said that the judgment is only a collateral remedy ?  Collateral to what ?  If to the fraudulent assignments, it must partake their character and follow their fate.

It is urged against us, that the assignments are not fraudulent, in such a sense as to invalidate a title subsequently acquired, to the same property.    But this begs the question. We say that no title could be acquired under such a judgment.

It seems, indeed to be admitted, that if the assignments are actually fraudulent, and not so by construction merely, the judgment would follow them.    The statutes against fraud are not mere positive prohibitions : they are expositions of the common law.    When that law prohibits a man from placing his property beyond the reach of his creditors, for his own benefit, it is too much to assert that the breach of it involves ·no immorality.    It is actual fraud.

Ignorance of the law on this head is no excuse. If the assignees supposed the assignments honest why did they take this judgment? If dishonest, why did they determine to act on them, till they should be declared fraudulent?

It has been attempted to draw a parallel, between assignments void under the statute, and judgments by confession, which were made void by our late act, for want of sufficient specifications of consideration. But these latter are void for mere informality and the debt may be fair. Under the statutes against fraud, no security is set aside, but for positive fraud.

THE CHANCELLOR. The judgment confessed to Sedgwick and Lord, became a lien upon the lands of Cairns, on the first day of August 1823: and the judgment recovered by Mackie, Milne and Lockhart, against Cairns, became a lien, on the eighth day of August in the same year. The money now in question, has arisen from a sale of lands of Cairns; and the sum is less than the amount of the judgment confessed to Sedgwick and Lord. If therefore, the judgment confessed to Sedgwick and Lord, is valid, they are entitled to this fund, in preference to Mackie, Milne and Lockhart.

The objection made to the judgment of Sedgwick and Lord, is, that it was fraudulent. This judgment was confessed to Sedgwick and Lord, not as creditors, but as trustees for certain creditors of Cairns. Sedgwick and Lord at the time of receiving the judgment, executed an instrument, by which they declared, that the judgment was confessed to them, for the purpose of securing payment to certain creditors of Cairns, and that they held the judgment in trust for that purpose, and for no other use whatever. This trust thus plainly expressed by a written declaration, is supported by the answers of Sedgwick, and is not disproved by any direct testimony. But it is urged by Mackie, Milne and Lockhart, that this judgment must have been intended to secure the same objects for which provision had been previously made, by the assignments from Cairns to Sedgwick and Lord; that it is a part of one connected series of transactions; and that if the preceding assignments are void, this judgment is also invalid. The preference intended to be secured to some of

*Margin:*

1825.

MACKIE
v.
CAIRNS.

1825.
9th March.

the creditors of Cairns, was an object of all these transactions; but the assignments and the judgment were very different methods of attaining that object.   The assignments provided not only for that object, but also for others, and for the benefit of Cairns ; and they contained provisions which were either clearly illegal, or at least, questionable.   The judgment was for the sole object of securing the creditors intended to be preferred ; and the motive for giving the judgment after the assignments, is not only probable, but also appears as a fact. It was to provide for the favored creditors of Cairns, a security which should be free from the objections to which the assignments were exposed.   The intention to use this judgment, only in case the assignments should be adjudged invalid, does not, I think, infect the judgment with fraud, or with the objections which are justly made against the assignments. Where a creditor has taken a security which is defective or questionable, he may for that reason, very properly, take a new security which shall be exempt from all objections. To consider this judgment as given and taken upon the trusts expressed in the antecedent assignments, would be a violent presumption, in opposition to all the facts, as they stand before the court.   The declaration of trust, and the testimony show, that the preference intended to be secured to the favored creditors of Cairns, was the sole object of this judgment.

It being an established principle, that an insolvent debtor may pay some of his creditors in preference to others, securities given for that purpose, are valid.   A judgment confessed to trustees, is one method of giving a preference and securing payment ; and such judgments are held valid, by our courts.   This is such a judgment; and pursuing the decisions, I am of opinion, that it is free from any legal objection. Being the first of the two judgments, it must prevail ; and Sedgwick and Lord are accordingly, entitled to the fund in question.

This decision awarding the fund to Sedgwick and Lord, disposes of the subject of controversy, and determines the cause excepting only, in respect to the questions of costs.   It may therefore, seem unnecessary, to examine the validity of the assignments made by Cairns to Sedgwick and Lord.

But these assignments form one of the titles by which Sedgwick and Lord claim the fund in question ; they have been held valid by the circuit court ; their validity has been contested and discussed in this court ; and the opinion which I entertain concerning them, will be in part, the foundation of my decree concerning the costs. I shall therefore, examine this branch of the cause.

Cairns a merchant, possessing considerable property and being largely indebted, became insolvent, in March 1823. On the twenty fifth day of that month, on the seventh and eighteenth days of April, and on the twenty ninth day of July in the same year, he executed to Sedgwick and Lord, certain instruments, by which he conveyed to them, all his property, in trust. The several trusts are expressed in these instruments ; and the first of them is in the following terms. " In " trust nevertheless, that the said Robert Sedgwick and Daniel " Lord junior shall first pay to the said William Cairns out " of the proceeds of the assigned premises, from time to time, " for the support of the said William Cairns and his family, " after deducting all costs and reasonable charges of the said " Robert Sedgwick and Daniel Lord junior, in and about " the premises, at and after the rate of two thousand dollars " per annum, until the said William Cairns shall be dischar- " ged from his debts under some insolvent or bankrupt law, " or otherwise : provided however, that such period of pay- " ment to the said William Cairns, shall not endure beyond " the period of four years from the date hereof." The second trust is for the payment of certain creditors of Cairns ; and the last, is for the payment of all his other creditors, ratably.

Are these assignments valid or void ; and what is the legal effect of the trust in favor of Cairns the grantor ?

No man can convey his property in trust for himself, and by such a transfer, defeat the rights or remedies of others. This principle must always be, as it has always been, law. A conveyance by the owner of property to another, in trust for himself, is in effect, a conveyance to himself ; and such a measure never can be necessary, for any legal or honest pur- pose. He who having the full title, desires to retain the control and use of his property, and yet transfers it to another.

to be held for the use of the grantor, can in the general course of human actions, have but one motive for that measure; and that motive must be, to defeat or elude the claims of others.   Hence, all conveyances for the use of the grantor, are fraudulent and null, against creditors and others having just claims upon the grantor, or upon the property conveyed. In all the refinements of uses and trusts, in the midst of multiplied distinctions between legal estates and equitable interests, which have abounded in the progress of English jurisprudence, this principle has never been doubted: and the mockery of a transfer by a debtor of his property, to a trustee to be held for the use of the debtor, has never been allowed to defeat the rights or remedies of his creditors.

The statute of the 13th of Elizabeth, chapter 5th, is the second section of our act for the prevention of frauds.   It enacts, that all conveyances made to delay, hinder or defraud creditors of their remedies, shall be void.

So far as the conveyances made by Cairns, were for his own use, it is most evident, that they were made to secure the portion of his estate reserved to himself, against the legal remedies of his creditors.   He was indebted and insolvent, and because he was so, he conveyed a portion of his estate for his own use.   What he reserved for himself, he withheld from his creditors; and he did so by conveyances, which if they could prevail, would effectually, defeat his creditors, as they have in fact, impeded the course of law, between Cairns the debtor and Mackie, Milne and Lockhart his creditors. These then, were conveyances made to hinder and defraud the creditors of Cairns.

But it is urged by Cairns and his assignees, that these assignments if void, are so only in respect to the portion of property set apart by Cairns for his own use; that even in respect to that portion, they are valid in law, and void only in equity; and that the assignments not being wholly void, they form a legal title in the assignees against Mackie, Milne and Lockhart as creditors.

The statute enacts, that every conveyance made to hinder or defraud creditors, shall be clearly and utterly void : and it is repugnant to the terms and sense of this provision, that

such a conveyance should be partly void, and in part, not void. But it is said, that adjudged cases have established such a distinction; and those cases must be considered.

The case of Estwick against Caillaud, 5th D. and E. 420, and 2nd Anstr. 381, is cited as an authority in support of these assignments. In that case, lord Abingdon had made an assignment of a part of his property, in trust, to pay first, expenses, next, half of the surplus to himself, and the residue to certain of his creditors. In a suit brought by the trustee claiming under the assignment, it was left to the jury to consider, whether the assignment was made to defraud any of the creditors of the grantor, or, not; the jury found a verdict for the plaintiff; and the court of king's bench refused to grant a new trial. The judges inclined to the opinion, that the deed of assignment was not void, in itself; but they were all clearly of opinion, that as the question of fraud, had been submitted to the jury, who had found that there was no fraud, there was no reason to disturb the verdict. Lord Abingdon was not an insolvent debtor; for so the case must be understood. It is not stated or intimated, that he was insolvent; and if a fact so important, had existed, it would undoubtedly, have appeared in the case. If he had been insolvent when he made the assignment, neither the court nor the jury would I apprehend, have hesitated to pronounce the assignment fraudulent against his creditors. It was an assignment of a part of his property; and his property not assigned, might have been amply sufficient to pay all his debts. Many years had elapsed before the assignment was impeached; considerable sums of money had been paid under it, to creditors; and Townsend, the creditor who impeached it, might have obtained payment from other property of lord Abingdon. The king's bench held, that the preference given to particular creditors, was lawful; and that other objections to the assignment, were questions of fact, which had been decided by the jury. But the king's bench did not determine, that a debtor who is insolvent, may assign all his property in trust first, for his own use, and next, for the payment of some or all of his debts.

51

The case of Murray against Riggs, 15 John. 571, is urged as a decisive authority upon this question. In that case, one of the instruments of disposition executed by the debtors, directed, that from the product of the assigned property, the trustees should pay first, all expenses, next, towards the support of the grantors, a sum not exceeding two thousand dollars a year, for each grantor, from a certain day, until they should be respectively discharged from their debts, or until one year after they should be discharged. This provision was held by the court of errors, in the circumstances of that case, not to be a sufficient reason for declaring the assignments absolutely void. It was the opinion of chief justice Thompson, that the assignments were not fraudulent in fact; and that the preferences intended to be secured to particular creditors, were legal. Upon those general grounds, the assignments were upheld : and the provision for the use of the grantors, was considered not to destroy the assignments, in other respects. But as I understand that case, the court of errors did not determine, that every assignment made by an insolvent debtor, of all his property in trust, first for himself, and next for certain of his creditors, is valid, either in whole or in part.

The case of Murray against Riggs, was very peculiar. The effects assigned were all the partnership property in the united states, of four persons who were partners ; and no other property of those persons or either of them, was in question. The complainants were assignees in bankruptcy ; and the object of their suit was to vacate the assignments of the debtors, which had been made before the bankruptcy. The first assignment was made in 1798 ; and the cause was not determined in the court of errors, until 1818. The complainants as assignees in bankruptcy, were entitled to sue ; but no creditor of the bankrupt complained of the assignments. This circumstance was considered very material, by chief justice Thompson. After expressing his opinion that no creditor of the bankrupt had been actually delayed or hindered by the assignments, he proceeded to say ; "for "any thing that appears, all the creditors of Robert Murray "and company, were satisfied with the assignment, and the

" provision there made for the payment of their debts :" and he added, that this was an important feature of the case. If the creditors of Robert Murray and company were indeed, satisfied with the assignment, this fact was truly important; for in all cases of this nature, the conveyance of the debtor is void, only in favor of his creditors. It seems to have been considered by chief justice Thompson, that the suit of the assignees in bankruptcy, was a severe exercise of their legal right to sue, while the creditors of the bankrupt had made no objection to the assignments; and that such a suit had little claim to favor in a court of equity. Concerning the reservation for the use of the grantors, his words were these : " the " grantors' having reserved to their own use, for their main- " tenance and support, a part of the property covered by this " deed, forms no objection to the appropriation of the residue. " This is fully established by the cases I have already refer- " red to, and is indeed, admitted by the chancellor, in the " case before us. Though in case of a deficiency to satisfy " the creditors, they might apply to a court of equity, for the " appropriation of the property so reserved, towards the pay- " ment of their demands." This like the other language of chief justice Thompson, should be taken in reference to the case in which it was used : and it shows, that in his opinion, a reservation for the use of the grantor, can never prevail against the creditors of the grantor; but that in a case like that of Murray against Riggs, such a reservation shall not invalidate those parts of the assignment, which would be legal if they stood alone.

It is conceded by all, that a reservation for the use of the grantor, is in equity, void against his creditors. Why is it void in equity? Because it is a fraud upon his creditors. But if it is a fraud upon the legal rights and remedies of creditors, and as such is void in equity, why is it not also void at law? The reason given in answer to this question, is, that if the reservation were held void at law, it would invalidate the whole conveyance, and would defeat all the objects of the assignment, while some of those objects might be legal and meritorious. It is evidently, to avoid this consequence, that the distinction which upholds the assignment at law, and

renders it void in equity, only in respect to the portion reserved for the grantor, has been invented. This distinction may with just limitations and restrictions, be reasonable and convenient. When the property of a debtor has been assigned for the payment of debts, subject to some trust for the benefit of the debtor; and no creditor has been impeded in the pursuit of his remedies; when the property assigned has been converted into money, and has been distributed by the assignee; when titles have passed from the assignee to purchasers, and when there has been a long acquiescence on the part of creditors, before the assignment is impeached, a new case of equity may arise from such facts. In such a case, it may be severe, to subvert so many transactions, from their foundation, on account of one illegal trust; and a milder course may satisfy the claims of justice. Assignments of long standing, which have been executed according to their tenor, without objection from creditors, may deserve some protection. In such circumstances, it may be real equity, to confine the remedy of a party complaining of the assignment, to the portion reserved for the debtor. Such was in effect, the idea advanced by two judges of the king's bench in the case of Estwick against Caillaud; and such also, was in substance, the case of Murray against Riggs. It is evident, that in those cases, the judges sensible that any reservation for the use of the debtor, is a flagrant violation of the rights of his creditors, still found reasons in each case, to constitute it a case of equity, forming an exception to the rule, that an act declared void by a statute, is void in all its parts.

This case has no feature of equity, which can constitute it an exception to the rule, that a fraudulent conveyance is wholly void. Even Cairns himself did not acquiesce in his own assignments. His first assignment of the twenty fifth day of March, was extended and explained, by the instruments of the seventh and eighteenth days of April; and on the twenty ninth day of July, he executed another instrument, revoking one of the provisions of the assignment of the eighteenth day of April. On the first day of August, he confessed the judgment to Sedgwick and Lord; an act which as it is now explained, admits, that he con-

sidered his preceding assignments untenable. On the part of the creditors, whose remedies were impeded by these assignments, there has been no acquiescence. When a conveyance is made to defraud creditors, it is not necessary to show, that any creditor has been impeded in the actual pursuit of his remedies against the debtor; but in this case, such a fact appears. Mackie, Milne and Lockhart urged their suit against Cairns; they obtained a verdict on the twenty third day of July, and on the eight day of August, a final judgment; upon which, they immediately, issued an execution against the property of Cairns. The execution was ineffectual; all the property being held or claimed by the assignees, under the assignments. Mackie, Milne and Lockhart have throughout, contested these assignments; it does not appear, that any creditor of Cairns has acquiesced in them; and they have gained no force, either by length of time, or an unresisted fulfilment of the trusts.

This case then, is in its circumstances, altogether different from the case of Murray against Riggs. These assignments were made to defeat the legal remedies of creditors; they have in fact, impeded the legal remedies of creditors; they have been constantly disputed by creditors; and no supervening fact has occurred, which can constitute a case of equity between these parties, in exception to the rules of law. To maintain these assignments, it must be held as law, that every assignment made by an insolvent debtor, of all his property, in trust first for himself, and next for certain of his creditors, is a valid act, against the legal remedies of any of his creditors. I do not find, that the court of errors has adopted any such proposition. The case of Murray against Riggs, was decided upon its own peculiar circumstances; it is authority for any case like itself; and it seems to me to establish, not that such assignments are universally valid against creditors; but that they may be so, in some cases and circumstances, upon peculiar considerations of equity. I can not understand the decision of the court of errors, to legalize by one universal rule, these reservations by an insolvent debtor, for his own use; but I understand by their decision, that in

MACKIE
v.
CAIRNS.

special cases, of peculiar equity, the whole assignment shall not be subverted, by this illegal trust.

The cases of Hyslop against Clarke, 14 John. 458, and Austin against Bell, 20 John. 442, here deserve attention. Both those cases were decided unanimously, in the supreme court; and the opinion of chief justice Spencer in one, and that of judge Van Ness in the other, are able expositions of our law concerning conveyances made to defraud creditors. The case of Hyslop against Clarke, was decided in 1817; chief justice Thompson concurred in the decision; and he repeated his approbation of that decision, in the court of errors in 1818, in his opinion in the case of Murray against Riggs; considering the two cases very different from each other. In the case of Hyslop against Clarke, a creditor objecting to the assignment of the debtor, had obtained judgment and issued an execution; and the sheriff had levied upon the goods in question. This actual pursuit of legal measures by the creditor to enforce payment, was considered important, by chief justice Thompson. The same facts exist in this case, excepting only, that the execution issued against the property of Cairns, was not levied. But this circumstance is of no importance, unless as an aggravation of the wrong sustained by the creditor, whose execution is impeded. When the creditor has obtained judgment and issued an execution, he has on his part, pursued the direct remedy of law to its end; and if the sheriff instead of seizing the assigned property, is deterred from levying, by the assignment, the creditor is still, fully entitled to impeach the conveyance, as made in fraud of his rights and remedies. In this case, as in the case of Hyslop against Clarke, the conveyance was used as an impediment to the legal remedy of the creditor; and in that case, chief justice Thompson concuring with the other judges of the supreme court, held the conveyance to be totally void.

In the case of Austin against Bell, the supreme court in 1823, recognized the decision made by the court of errors in the case of Murray against Riggs; but it is evident from the opinion delivered by chief justice Spencer, that the supreme court yielded mere obedience, and considered the doctrine of

the case of Murray against Riggs, as peculiar to that case. Without impugning that doctrine, the supreme court decided the case of Austin against Bell, upon its own facts ; and they found it to be a case in which the debtors had inserted in their assignment, various trusts, of which some appeared to be legal, and others or at least one, was clearly void, as a fraud upon creditors.   The supreme court adjudged the assignment totally void ; holding, that a conveyance rendered void by a statute, is wholly null, though some of its objects may be legal ; and holding, that this rule of law had not been altered by the decision of the court of errors, in the case of Murray against Riggs.   One of the objects of the assignment in the case of Austin against Bell, as in this case, was the preference of certain creditors ; and though this object was admitted to be legal, the whole assignment was annulled.

The cases prior to that of Murray against Riggs, were trusts or reservations for the grantor, without specifying the object to which he should or might apply the reserved portion of his estate.   In the case of Murray against Riggs, the reservation was for the support of the grantor, during a certain period, or until he should be discharged from his debts : and it is now urged, that the support of the grantor from his own estate, is an object which if not lawful, is at least, so reasonable, as to entitle these provisions to some favor.   This object is clearly illegal.   The fundamental principle of law and justice, is, that all the property of an insolvent debtor should be applied to the discharge of his debts.   If the debtor may want sustenance, so also may the creditor, and if one of them must suffer, the misfortune must according to all the principles of law and morals, fall upon the debtor.   But if it is reasonable, that some moderate portion of the property of an insolvent debtor, should be allowed for his sustenance, what shall be the allowance, and by whom shall it be made ? Shall the debtor finding himself insolvent, determine both for himself and his creditors, what allowance will be reasonable or convenient for his own wants, and the period during which he shall be maintained from his own estate ? Can an insolvent debtor first set apart, a portion of his estate for himself, and leave the residue for his creditors ? Is it law that every

insolvent debtor in this state, may by assigning all his pro-perty in trust, secure to himself an allowance of two thousand dollars a year, or any other sum, from his own property? I know no such law. But this topic is too clear, to require discussion. Whatever may be the dictates of humanity or justice, in favor of a debtor who may be honest as well as insolvent, it never can be tolerated, that every insolvent debtor shall judge and determine for himself, in defiance of his creditors, that any portion of his estate shall be retained for his own use. Reservations for the support of the insolvent debtor, must be treated like any other reservation of his property for his own use : and all such reservations are void against his creditors.

The assignment made by Cairns on the eighteenth day of April 1823, provides, that if any of his creditors should have made any attachment of any of his property, such creditors should be excluded from the benefit of that assignment, unless they should relinquish their attachments. This provision is clearly illegal, and vitiates the instrument which contains it. When a debtor thus transfers his property, upon the condition, that his creditors who are pursuing their legal remedies, shall relinquish those remedies, such a transfer is plainly made to coerce the pursuing creditors ; it directly impedes the course of law and justice ; and it must be void. But I leave this part of the case without farther discussion ; the trust for the benefit of Cairns, being in my opinion, sufficient to destroy these assignments.

The reservation for the benefit of Cairns, being illegal and void ; are these assignments void only in that respect, or are they void in all their parts? It is an ancient principle, that when a deed is made void by a statute, it is void throughout ; that the courts can not separate the deed into distinct parts, and give effect to those which may be lawful, while they annul those which are illegal ; but that the whole must be adjudged null. The English learning on this point, is well collected in the opinion of the supreme court, in the case of Hyslop against Clarke : and this principle as I have already stated, was adopted and enforced by the supreme court, both in that case and the more recent case of Austin against Bell.

The principle itself, is indeed, nothing more than an assertion that an act of the legislature is law to the courts of justice. When the legislature enact, that a deed shall be clearly and utterly void, their intention can neither be misunderstood nor declared in vain. Nor is there any injustice in this doctrine : for they who desire to make such dispositions, may themselves, separate them, into distinct acts ; and he who gives or receives a deed made in violation of a statute, has no reason to complain, that the conjunction of illegal objects with those which are lawful, frustrates all his purposes.

The idea that though one or more of the objects of the deed is fraudulent, yet if any of the trusts are legal, the deed is valid at law, and the creditors may have relief against the illegal trusts in equity, is found in no adjudged case prior to that of Estwick against Caillaud. Two of the judges, Kenyon and Ashhurst, there suggested in argument, that in such a case as was then before them, the postponed creditors might apply to a court of equity, for the satisfaction of their debts, from the portion of the estate reserved by the debtor to himself. They cited no authority in support of this idea ; and they left it as their own suggestion, that courts of equity might perhaps, give such relief. The other judges Buller and Grose, were silent upon this topic ; and the court evidently founded their decision upon other reasons, which have been mentioned. In the case of Murray against Riggs, the idea, that the remedy of the creditor is only in equity, against the portion reserved for the debtor, is placed altogether, upon the suggestion made in the case of Estwick against Caillaud. When a deed is void in some parts, merely by the common law, the courts may perhaps, sustain other parts which are free from objection ; but when a deed is annulled by a statute, all courts both of law and equity, are bound to adjudge the deed void. Conveyances made in violation of the statute of the 13th of Elizabeth, our statute of frauds, are equally void in both jurisdictions ; and the same conveyance can not be valid at law, and void in equity. It is either valid or void, both in law and equity. If it is void by the statute, it is wholly void, and must be so adjudged in all courts. If there can be any exception to this rule, it must be found in a case

like that of Murray against Riggs ; in which extraordinary circumstances led to a decision, which neither denies nor disproves the general rule.

In this case, if the mere preference of one class of Cairns' creditors to another, stood alone, it would be valid ; but these assignments are in other respects, clear violations of the statute. I therefore, hold them to be, as the statute declares they shall be, utterly void and of no effect.

This decision destroying the assignments, destroys the preference provided by those instruments. The effect of such a decision in this or any similar case, is merely, that the property of the debtor is applied to the satisfaction of his debts, in a different manner. It is either distributed ratably among all his creditors, or if any of them have a preference to others, it is obtained only by the ordinary remedies of law against the debtor.

The principle that a debtor unable to pay all his debts, may pay some of them, in preference to others, is simple. As the debtor may pay, so he may deliver goods or convey lands, in payment. In the progress of this doctrine, assignments in trust for the payment of debts, were introduced. When such assignments are made merely for the payment of debts, they are often convenient to creditors, as well as debtors ; and they seem not to involve any great evil. But when the debtor is allowed to proceed beyond the single object of paying his debts, such assignments become pregnant with great mischiefs. If he has the power and is disposed to proceed, beyond the point of legal and moral obligation, his first object will in general, be, to secure a portion of his estate for himself ; and another will be, so to dispose of the residue, as to obtain a discharge from his debts. If he may assign all his property in trust, partly for himself, and partly for his creditors, and may allot to some of his creditors, absolute payment, and to others, payment upon conditions, that they shall do or not do acts dictated by himself, he is indeed, armed with a most formidable power. If a debtor may by any machinery of his own contrivance, either reserve his property for his own use, or wield it in such manner, that his creditors can not reach it in the due course of law, or can

not reach it without great difficulties, he becomes the master, and holds the power of coercion.   If the debtor by assigning all his property upon multifarious trusts, of which, some are lawful and others fraudulent, might withdraw it from execution at law ; and compel any creditor who seeks payment, to resort to a court of equity and litigate there, both with the debtor and all others having claims on the fund, this evil alone, would be great.   Against such powers in the debtor, the remedies given by our laws to creditors, would be feeble. We have no law of bankruptcy ; and imprisonment for debt, is reduced to a name.   It is only against the property of a debtor, that our laws have any efficacy ; and the laws concerning conveyances made in fraud of creditors, are now, the only efficient check upon the power of disposition in the. debtor.   While assignments for the payment of debts, must be supported, I can not perceive, that either law, equity or policy requires, that such assignments should be sustained, when they are complicated with trusts and followed by consequences, so injurious and vexatious to creditors.   Assignments containing the provisions which appear in this case, are of recent invention ; and if they can prevail, they will to a great extent, afford to debtors, a secure triumph over their creditors.

The question concerning the assignments of Cairns, was the principal subject of litigation in the circuit court ; and that court held the assignments to be valid.   The assignments being now held void, Mackie, Milne and Lockhart who have appealed from the decision of the circuit court, are entitled to their costs, from the fund in controversy.   As Sedgwick and Lord now recover the fund by virtue of the judgment confessed to them, they and Cairns, are entitled to their costs from the same source.

The costs arising from certain motions made in the circuit court, were awarded by that court to be paid by some of the parties to others.   It would in my opinion, be unfit, to vary the orders of the circuit court, concerning those costs.   They were acts in the discretion of that court ; the costs must be small : and though an order awarding costs, may be reviewed

**1825.**  upon an appeal, I do not think it necessary in this instance, to decide differently from the circuit court.