The opinion of the Court was delivered by
Rogers, J.
This is a writ of quo warranto, issued by leave of Court, at the suggestion of Peter Eritz et al. commanding William Gill and others, to show by what authority they exercise the offices, and liberties, of directors of the Philadelphia *Savings Institution; and in the latter case, by what authority they claim to be members of the institution. The respondents have filed a plea in bar, to which the relators have demurred specially.
The case, as it appears from the pleadings, is this. On the 5th of April, 1834, the legislature incorporated the Philadelphia Savings Institution. In the first section, the persons therein named, viz. Peter Eritz and others, and all and every person or persons thereafter becoming members of the institution, are created a corporation by the name and style of the Philadelphia Savings Institution. By the fifth seetipn, the directors have power to provide for the admission of members, and furnishing proofs of such admission. The act also provides for a meeting of the members and choosing thirteen directors from among them, to manage the affairs of the institution. This act received a judicial construction at the March term 1836, when, among other things it was resolved, 1st. That stockholders were' not, as such, members of the corporation; and 2d. That persons originally members, continued to be such, although they never possessed stock, or had parted with it. After this decision, viz. on the 16th of June 1836, the legislature enacted, that the third section of the 4th article of an act, entitled, an act to recharter certain banks, which directs the mode of voting for directors be extended to this institution; and that, therefore, stockholders shall bo eligible.for directors, and that every depositor of six months standing shall be entitled to one vote for every one hundred dollars he or she shall have in the institution. And it also provides, that the election for directors shall be held on the second Monday in January next, and annually thereafter. This act gave — and denositors the right of voting, and the for- " .Airactors, a right which they *243 institution. With the exceptions of those specific changes, the charter remains as before. By the authority of this act, on the 9th of January, 1837, the respondents in the first quo warranto were elected directors; and on the 6th of February, of the same year, they passed the by-laws Nos. 4 and 32, that every person holding one share of stock, shall be a member of the institution, and upon a transfer of such stock, such person shall cease to be a member; and that the proof of the admission of members shall be furnished by their appearing on the books to be stockholders. Various other by-laws were passed, viz. by-laws, Nos. 33, 34, and the by-laws adopted the 28th April 1837, referred to in the pleas in bar, but which it is immaterial to notice. On the 3d of April, 1837, the legislature repealed *the 10th section of the act before referred to, and further enacted, that the company shall elect the directors on the first Monday in May, and the first Monday in every May thereafter, annually. The respondents aver, that on the 9th day of January, 1837, they were duly elected, and chosen directors, agreeably to the original charter, and to the provisions of the 10th section of the act of the 16th June, 1836; and that the respondents thereby became, and were entitled to all the rights, &c.- of directors. They also aver, that on the first day of May 1837, (the time fixed for the election of directors by the repealing act of the 3d April, 1837,) they were again duly elected and chosen directors by the members of the institution, agreeably to the resolution of the 3d April, 1837, &c. and to resolutions of the corporation, passed at meetings of the directors duly convened, and held on the 20th, 24th, and 28th April, &c. And they further aver, that on the 2d day of May, 1837, at a meeting of the directors, it was resolved, that in case the said last mentioned election should prove to have been irregular and illegal, then, in obedience to the 4th section of the charter, the person so elected continue to hold and exercise their offices by virtue of the- election in the January preceding. They also aver, that they were, on or before the 1st day of January, 1837, and have so continued to be, members of the institution, agreeably to the acts of assembly, and bylaws aforesaid; and since the said elections, respectively, they have used during the said time, and still use, the liberties, franchises, &c. *244 two alleged elections, of the 9th of January and 1st of May, 1837.
And 3dly. The relators contend that the directors had no power under the charter to admit members, but that their authority extended merely to provide for their admission. If they had the power, the by-laws Nos. 4 and 32, were an improper and unreasonable exercise of that power, contrary to the fundamental principles of the charter, and therefore void.
As to the first objection.
The respondents cannot, in general, aver, that they were duly elected director’s; and if the plea contained nothing more than this general averment, it would be bad. The case of Rex v. Leigh, (1 Burr. 2144,) is full to this point. But the respondents, in addition, set out the times and places of the election, and aver that the first election was held in pursuance of the authority granted by the original charter, and to the provisions of the 10th section of the act before referred to, copies whereof they annexed, and made parts of their plea. It was open to the relators to demur or take issue on the fact, whether the election had been in conformity to the charter, *without being exposed to the difficulty suggested in The King v. Birch, (4 T. R. 619,) of not knowing on what fact to go down to trial. The respondents allege, that the election was held at a particular time, and aver the authority under which it was held; and this, we think makes the plea certain to a common intent, which is all the law requires in a plea in bar. Com. Dig. title Pleading, E. 7, c. 17; 1 Saund. 49, n.; 1 Chitty, 513.
Then as to the second objection, viz. duplicity and uncertainty in pleading, in relying upon the alleged elections of the 9th January and 1st May, 1837.
At the common law, it was a general rule, equally affecting declarations, pleas, replications, &c., that the pleading must not be double ; that is, that no single count or plea should state two or more facts, either of which would of itself, independently of the other, constitute a sufficient ground of action, or defence; a rule founded on the principle, that it would be unnecessary and vexatious, to put the opposite party to litigate and prove two points, when one would he sufficient to establish the matter in isjgeneral, be single; and if Rjsonlains.. and remn're _
*245 Whether the respondents would have the right to rely on two titles or distinct pleas, under the statutes 4 & 5 Anne, ch. 16, and 9 Anne, ch. 20, sect. 7, which extends the former to all writs of mandamus, and informations in the nature of a writ of quo warranto, it is unnecessary to determine. It would seem, however, that those acts, in Rex v. Newland and Rex v. Briscoe, (2 Burr. 2147,) have been so construed, as not to give liberty to plead more pleas than one, even with leave of the Court. The statute of Anne, allowing double pleas, does not appear to aid a duplicity in one and the same plea, though it allows of different grounds of defence being stated in different pleas, with the exception that the pleas must not be entirely inconsistent, an exception which has been somewhat relaxed. These principles are in effect conceded, but the respondents seek to avoid their application, by the allegation, that all the facts in the plea constitute but one title; that they rely upon the election of the 1st of May, 1837 ; and that the other averments are but inducement, or surplusage, which the Court will disregard. It is undoubtedly .true, that the defendants are not precluded from introducing several matters into their plea, if they be constituent parts of the same entire defence, and form one connected proposition, or be alleged as inducement to, or as a consequence of another fact. But the facts stated in the plea are ^neither constituent parts of the same entire nor do form one connected proposition; nor can they properly be said'to be inducements to, or the consequence of another fact. The plea takes two grounds, either of which, independent of the other, would constitute a valid defence. If the election of the 1st of May, 1837, was an election in conformity to the charter, it would be a bar to the writ, or if that election was illegal, and the election of the January preceding, good, that would be a defence; for the charter expressly provides, that the directors chosen to manage the affairs of the institution, shall continue in office for twelve months, and until a new election takes place. The respondents rely upon two titles, 1st, Upon the election held on the 1st of May, 1837, when, as they allege, they were duly elected and chosen directors of the corporation, agreeably to the provisions of a resolution passed the 3d of April, 1837, entitled^&m any passadj *246 ceding. It is impossible to understand this part of the plea, otherwise than an assertion of title, by virtue of the election of the 9th of January, in the event of the last election being declared void. And this, we believe, was so understood and intended by the pleadings.
The third, last, and most important objection, remains to be disposed of. It relates to the claim of the authority, by the directors to admit members, and the validity of certain by-laws, particularly Nos. 4 and 32, passed by the directors. The relators deny that the directors have the right to admit members, but they insist, that the authority is confined to providing for their admission. They also contend, that the by-laws Nos. 4 and 32, by whomsoever passed, were an unreasonable exercise of power, contrary to the fundamental principles of the charter, and therefore void.
The by-laws are in the following words. By-law No. 4. “ The directors, in accordance with the powers to them given by the charter, to provide for the admission of members, and furnishing proofs of such admission, do declare, that every person holding one share of stock, shall be a member of the said institution; and that upon a transfer of such stock, such person shall cease to be a member.”
By-law No. 33. — “The proof of the admission of members shall be furnished by their appealing to be stockholders, on the ■ books of the institution.”
It cannot be reasonably doubted, that it was the intention of the legislature, so far as it could be legally done, to re-the the in the same situation it was in under the original charter. In 1 Wharton, 461, it was held that this corporation was not a monied institution, but that it partook of the nature of a charity: that it was principally intended for the benefit of the depositors. As a means to effect this principal object and design of the charter, a capital was raised, as a pledge for the security of the money deposited. That there were three classes of persons referred to in the charter; members, who may or may not have a pecuniary interest in the institution; stockholders, Kitovs. ... Tbn.t the members alone had the direction bat the *247 ley may, if they are so disposed, convert into Promote their own pecuniary interests, at the expenwrir^iBB^positors, for whose benefit alone the institution was created.
The respondents base their right on that part of the charter which authorises the directors to provide for the admission of members. They must rest on the power given by the charter, before the passage of the act of the 3rd of April. The tenth section of that act confers no new power which bears on this point. It provides merely, under certain regulations, that, stockholders and depositors may vote, and that the former, as such, may be elected directors.
The question divides itself into two parts. Have the directors a right to admit members ; and if they have, are the by-laws, Nos. 4 and 32 a proper and legitimate exercise of the right ? We are of the opinion, that the respondents have failed in both particulars.
In the first section of the charter, Peter Fritz, and others, naming them, and all and every other person or persons, after-wards becoming members, in the manner mentioned, are created a corporation and body politic, by the name and style of the Philadelphia Savings Institution, and by that name have succession ; and they have generally the power to do every other act or thing necessary to carry into effect the provisions of the act, and to promote the object and design of the corporation. Under that section, without more, the members would have power to admit other members; for the power of electing both officers and members, is an incident to every corporation. It is not necessary that such a power should be expressly conferred by the charter. If the power is not expressly lodged in other hands, it must be exercised by the company at large. But this power of election may, by the charter, he taken from the body at large, and reposed in a body of directors, or any other select *body. Whether this has been done, either 'expressly, or by necessary implication, is the question; and to determine this point, reference must be had to the provisions and spirit of the charter. It is contended, that the legislature have manifested the intention of, talrir™ — *248 or by necessary implication, taken away in rectors have authority to provide for the adml___ that is, to .prescribe the time, place, and maiJBBWMfffcfmg^the election, (on all of which the charter is silent); an exemplification of which is given in several by-laws, made by the respondents, and incorporated into their special plea. In the preceding part of the section, the legislature have expressly conferred the power on the directors, to elect a president from their own body, to appoint such officers and agents as they shall deem necessary to conduct the business of the institution, and to pay them compensation. This is the only express power given; for in the remaining part of the section, the phraseology is certainly different. They have the power only to provide for the manner in which certain specific duties, enumerated, shall be performed. Rut besides, in the absence of an express injunction, we cannot give it the construction for which the respondents contend, as it would tend to disappoint the general intention and design of the charter, which was evidently framed with a view to an efficient control over the directors, vested in the body at large, which would be effectually prevented, if the directors could admit whom they pleased, as members.
Rut granting the power, was this a proper exercise of it? The by-laws of a corporation must not be inconsistent with its charter. The charter is the fundamental law of the corporation ; and as is said in Angell and Ames on Corporations, 188, is in its terms and spirit as a constitution to the petty legislation of the body acting by and under it; and hence all by-laws in contradiction of it are void. In Rex v. Spencer, (3 Burr. 1838,) it is said, that the true test of all by-laws, is the intention of the Crown in granting the charter, and the apparent good of the corporation. In the same case it is said, by Mr. Justice Wilmot, that corporations cannot make by-laws, contrary to their constitution. If they do, they act without authority. The power of making by-laws, in whomsoever it may reside, is in trust for the benefit of the whole, and must be exercised with discretion. Hence, by-laws must be reasonable, and *II_±hnsA which are nugatory, vexatious, and oppressive, or mani-
-- — -1 .in.' Mf IP ■ ' “ *249 void. As has been before observed, this is tion, but in the nature of a charity, intendea^^^^^H^^^^I depositors. The legislature have said, in languag^^^^^^^^H be mistaken, that stockholders, as such, are not cipate in its management. They have confided that original members, and such as might be afterwards chose!^^^^# have also thought proper (the wisdom of which cannot be to impose an important check on the directors, resting ir^^H body at large. "With a full knowledge of all this, the respondent# who were elected by the stockholders under a law (which was' soon afterwards repealed,) and who themselves are stockholders, and not members, have by one sweeping resolution, obtained, and seek to retain, the entire control of the institution. The by-laws admit at once all the stockholders (of course including themselves) to all the rights, benefits and privileges of memN"'*, in subversion of the fundamental principles, and contrary to spirit and provisions of the charter. The election is made • i-out regard to the qualification of the individual to perfori¡ .-the trust, and to carry into effect the object of the charter, but for the single purpose, so far as appears, of having the government of the company, by means of others who are identified-in interest and feeling with themselves. The case itself is an illustration of the wisdom of the rules before stated. As well might they have admitted any other class of persons, the butchers, tailors, or shoemakers, as a body, or indeed any free white male inhabitant, of the city and county of Philadelphia; and in some respects such a by-law would be more reasonable. They would at least have no particular pecuniary interest to subserve, as they would stand strictly impartial, between the conflicting interests of the stockholders and depositorswhereas stockholders may have an interest in opposition to the depositors, of which the legislature