# Towar *v.* Barrington et al.

[MARCH 15, 1851.]

To avoid a deed, as fraudulent, under the statute of 13 Eliz. ch. 5, it must be shown that both parties to it intended the forbidden fraud.

An assignment for the benefit of creditors is not fraudulent in consequence of the assignors having previously confessed a judgment in trust for all their creditors except the complainant, upon which an execution had been issued and levied before the making of the assignment.

A chancellor will not exercise his discretion in giving effect to executory agreements, in detriment of the rights of innocent third persons, without notice.

Therefore, an agreement with a creditor not to assign, encumber or dispose of the debtor's personal property in any manner, to the prejudice of the creditor, and that every such assignment shall be void as to him, will not be enforced in equity, when the rights of other creditors without notice have intervened.

The levying of an execution operates to vest an interest in the sheriff, sufficient to enable him to pursue the goods levied in the hands of a trespasser; but, until sold, the property of the judgment debtor is not wholly divested; it remains in him, subject to the levy, and is at his disposal, burdened with the encumbrance.

A judgment confessed by a firm to secure sundry partnership creditors, is not fraudulent, because among the debts secured, are sums owing by the firm to the individual partners as executors or administrators.

Neither the common law nor the statute of 13 Eliz. prohibit an insolvent from preferring one creditor before another by a confession of judgment.

But since the passage of the act of 16th April, 1849, such preference, by a confession of judgment, is fraudulent and void, as against a subsequent assignee for the benefit of creditors; and a court of equity, in such case, being in possession of the whole subject, by the filing of a creditor's bill, will compel all the creditors to come in under the assignment.

IN EQUITY. Motion for special injunction. This was a bill in equity filed by Alexander Towar against Edmond Barrington, George D. Haswell, Mary Ann Haswell and Thomas Bell, setting forth that the complainant, being a bookseller and stationer, in Philadelphia and New Orleans, on or about the 26th May, 1838, sold out his stock in

Philadelphia, to the firm of Haswell, Barrington & Has-well, (then consisting of John J. Haswell, since deceased, and the said E. Barrington and G. D. Haswell) and took from them a bond and warrant of attorney in the penal sum of $25,000, which, in an agreement between the parties, of the same date, was declared to be given to secure the payment of the said purchase, and of certain notes advanced for their accommodation, &c. The agreement also provided, that *the said obligors should not assign, or in any way dispose of their stock or effects to any person or creditor in prejudice of said Towar, and that every such assignment or transfer should be void as to him.* That, afterwards, about the 13th August, 1839, he sold his New Orleans stock to the same firm, who also assumed the payment of all the debts due by the complainant, arising out of the New Orleans business, and executed to him two bonds and warrants of attorney, one in $20,000, conditioned for the payment of $10,000, the amount of the purchase money; and another in $34,000, conditioned for the payment of $17,000, to secure performance of the covenant by the obligors, to pay the debts and liabilities of the complainant. Simultaneously with these last bonds and warrants, an agreement was executed, declaring the purpose for which they were given, and containing provisions similar to those in the agreement of 26th May, 1838; with the further proviso, that Mr. Towar should at all times have the right to inspect the books and accounts of the obligors. That on the 1st November, 1839, Haswell, Barrington & Haswell executed articles of copartnership, wherein it was stipulated that neither of the said parties should use the notes or paper of the firm for their private responsibilities, or in their individual capacity engage in any contract, &c., that could, in the remotest degree, prejudice the interests of the firm. That on the 3d September, 1840, another agreement was executed between the parties, which, after reciting the inability of the firm to comply with their engage-

[ Towar *v.* Barrington. ]

ments with the complainant, provided, that he should be at liberty at any time to enter up judgment on his bonds and to issue execution thereon; and fixed the amount then due to him at $43,600,21.

The bill then set forth that by an agreement dated the 21st July, 1841, John J. Haswell withdrew from the firm; and the remaining partners promised and agreed with complainant, that *they would not give any judgment or other lien on their joint property or stock in trade that would be prior or detrimental to the claim of the complainant.* That on the 10th April, 1844, Barrington & Haswell gave to the complainant an additional bond and warrant of attorney in $16,000, conditioned for the payment of $8,000, with interest at five per cent. That on the 7th March, 1846, John J. Haswell departed this life, and George D. Haswell obtained letters testamentary as executor of his estate. That at the time of exhibiting this bill, the amount due to complainant was $26,000. That, on the 21st October, 1850, the said Barrington & Haswell, being largely indebted to other persons, and being insolvent both individually and as a firm, in violation of their agreements with complainant, and with intent to evade the provisions of the acts of 17th April, 1843, and of 16th April, 1849, executed a bond and warrant of attorney to Mary Ann Haswell, the widow of John J. Haswell, in $19,425,82, conditioned for the payment of $9,712,91, upon which judgment was entered in the office of the prothonotary of the supreme court, and a *fieri facias* immediately issued thereon, by virtue of which the sheriff had levied on all the personal property of the defendants. That no debt was then due by the said firm to Mary Ann Haswell. That on the 21st October, 1850, Barrington & Haswell executed to Thomas Bell a general assignment in trust for all their creditors, without preference. Wherefore, the complainant prayed, *inter alia,* that Mary Ann Haswell might be restrained from proceeding upon her said execution, and that the levy might be set

[ Towar v. Barrington. ]

aside; and that Thomas Bell might be restrained from pro-
ceeding under the assignment, and that the same might be
set aside and avoided.

The defendants, in their several answers, admitted the
execution of the instruments recited in the bill; but averred
that the bond and warrant of attorney to Mary Ann Has-
well were, *bonâ fide*, given to secure debts justly due; that
at the time of their execution, Mary Ann Haswell executed
a declaration of trust, annexed to the warrant of attorney,
wherein she declared that she held said bond and warrant
of attorney in trust for herself, and certain other specified
creditors of Barrington & Haswell, they being all the cre-
ditors of the said firm, *except the complainant*.    Among the
list of creditors are the names of the assignors as executors
respectively of the estates of J. J. Haswell and Michael
Connor.    The answers averred, that these debts were justly
due, and that the indebtedness to Mary Ann Haswell ap-
peared on their books, to which complainant had access;
that the bond and warrant of attorney were not given to
Mary Ann Haswell in fraud of creditors or of the acts of
assembly.    That the bonds and warrants, and agreements
formerly given to Mr. Towar had, at his special instance
and request, always been kept concealed from the other
creditors, who, in entire ignorance thereof, had given them
credit.  Mrs. Haswell and Mr. Bell denied all knowledge
of the bonds and agreements with Towar.    Mrs. Haswell
further denied that, when she received the bond and war-
rant of attorney, she knew of the insolvency of the obligors,
or had the least reason to suppose they intended to make
an assignment.    Mr. Bell likewise positively denied that at
the time when the assignment was executed, he had any
knowledge of the bond which had been given to Mrs.
Haswell.

The complainant also obtained, on the common law side
of the court, a rule to show cause why the execution in
favour of Mrs. Haswell should not be set aside; in support

[*Towar v. Barrington.*]

of which depositions were taken, which in no respect conflicted with the statements in the defendants' answers. The motion for a special injunction, and rule to show cause, were argued together.

*H. M. Phillips* and *Perkins*, for complainant, contended, that the judgment in favour of Mrs. Haswell was void as against complainant, in law and in fact. It is void in fact, because confessed to prefer the obligors; *Irwin* v. *Keen,* 3 Wh. 347. It is void in law, because in violation of the statute of 13th Eliz., and the 14th sect. of the act of 16th April, 1849, (Pamph. p. 664;) *Hart* v. *M'Farland,* 1 Harris 182. It was intended, by the acts of 1843 and 1849, to prevent preferences by an insolvent, in any manner; the decisions in *Blakey's Appeal,* 7 Barr 449, and *Lea's Appeal,* 9 Barr 504, occasioned the change in the law made by the act of 1849. The assignment is void because fraudulent in fact; the transactions show the intention of the assignors to prefer all their creditors, except complainant, and the assignment thus operating only to hinder and delay *him,* is clearly within the statute of Eliz. It was intended to reach the surplus after payment of the judgment. But the agreement with complainant prevents the assignors from making either judgment or assignment to his prejudice. An assignee in trust for creditors stands in the shoes of his assignor: he is not a *bonâ fide* purchaser. *Pierce* v. *M'Keehan,* 3 W. & S. 283; *Luckenbach* v. *Brickenstein,* 5 W. & S. 149; *Vandyke* v. *Christ,* 7 W. & S. 373; *Wilson's Accounts,* 4 Barr 430; *Ludwig* v. *Highley,* 5 Barr' 132. By the confession of judgment and execution levied, the property passed out of the debtors, and they had either nothing to assign, or only the surplus, after payment of the judgment. This goes to establish the frauds complained of; and the law makes such transactions fraudulent, *per se; Seal* v. *Duffy,* 4 Barr 274.

[ Towar v. Barrington.]

*R. K. Scott* and *C. Fallon*, for M. A. Haswell and Barrington & Haswell; and *J. Fallon*, for Bell.—The answers are to be taken as verity, no evidence having been taken to contradict them; especially as they are responsive to the charges in the bill; 1 Sm. Ch. Pr. 271, 272, and notes; 8 Ves. 35; 4 Paige 111; 5 Paige 112; 6 Paige 295; 1 Sm. Ch. Pr. 596, 601. The bond and warrant, and assignment are alleged to be entirely separate and distinct transactions. Every single allegation upon which complainant asks for equitable relief, is positively and distinctly denied by all the defendants, with the single exception of the execution and delivery of the several instruments to Towar, as to which defendants deny all knowledge until after the bond to Mrs. Haswell and the assignment to Mr. Bell were executed. Even had Barrington & Haswell designed a fraud, the other parties, having had no notice, cannot be affected by it; *Magniac* v. *Thompson*, 7 Peters 348, 360. The bond in no way enured to the benefit of the obligors except in a representative capacity; and where two rights meet in the same person, they are to be viewed as if they existed in different persons; *Allison* v. *Wilson*, 13 S. & R. 333; *Prevost* v. *Gratz*, 1 P. C. C. 373; *Marshall* v. *Hoff*, 1 Watts 440; *Petrie* v. *Clark*, 11 S. & R. 377; *Appleton* v. *Donaldson*, 3 Barr 387; *Depau* v. *Waddington*, 6 Wh. 220. The cases of *Irwin* v. *Keen* and *Hart* v. *M'Farland*, cited for complainant, do not apply; those were cases of actual fraud. Barrington & Haswell have denied their insolvency and all intent to evade the provisions of the acts of 1843 and 1849. In order to avoid the assignment as to Bell, he must have participated in, or have had knowledge of, the intended fraud; *Magniac* v. *Thompson*, 7 Peters 361; *Mackie* v. *Cairns*, 1 Hopk. Ch. 373. It cannot be pretended that the agreement of 1838 actually vested an interest or estate in the debtors' effects in the complainant; and to say that innocent creditors, selling their goods in entire ignorance of such an agreement, are to be affected by it, in

[ Towar *v.* Barrington.]

order that their goods might be drawn into the vortex of the trust, is to rely on a fraud too gross to require more than an exposure. The cases cited for the complainant are wholly inapplicable. The bond and warrant to Mrs. Haswell do not constitute an assignment of the estate, which remained in the debtors, subject to the levy, which was not their act; and this distinguishes the case from *Seal* v. *Duffy*, a distinction recognised in *Blakey's Appeal*, 7 Barr 449.

The opinion of the court was delivered by

BELL, J.—I am unable to recognise any ground, presented by the pleadings and proofs, upon which the assignment made by Barrington & Haswell to Bell, can be successfully impeached. True, objections have been presented, but in my apprehension, none of them are sustainable.

The first is, that it is void under the statute of Elizabeth, as operating to hinder and delay the creditors of the assignors. Regarded generally, it operates no further to delay creditors than all similar assignments made by persons in insolvent circumstances. And yet these have never been esteemed as falling within the purview of the statute making fraudulent conveyances void. On the contrary, they are viewed as a means of effecting a distribution of the debtor's property among his creditors, in satisfaction of their several claims, and this in furtherance of a duty incumbent upon him. Where even a preference was given, by these instruments, to one creditor or class of creditors, before another, it was held not to be fraudulent, either at common law, or under the statute, and it required the intervention of the legislature to make it so.

But it is said the assignment before us stands upon ground peculiar to itself: that it must be considered in connexion with the judgment confessed to Mrs. Haswell, in trust for all the creditors of the assignors except the complainant, and so considered it exhibits a clear intention by

[ Towar v. Barrington.]

them to delay him, in favour of all others. This position is deduced from the assumption that the assignment, notwithstanding the comprehensiveness of its terms, was intended to cover only the surplus remaining after payment of the Haswell judgment. I find no warrant for this assumption, either in the language of the instrument itself, in the circumstances attending the transaction, or in the answers of the defendants, which, as the case stands, must be accepted as true. The assignment purports to convey all the estate and effects of the grantors, for the benefit of all the creditors, equally, and the mere fact of the prior confession of judgment could not interfere with its legal operation, inasmuch as that judgment conveyed no interest in the property of the defendants, nor constituted a lien upon it. There is, therefore, nothing in this fact, standing alone, showing an intent by the assignors to postpone the complainant; and they swear they entertained no such intent. Besides to avoid a deed, under the statute of Elizabeth, it must be shown that both parties to it intended the forbidden fraud. This is clear from the cases of *Magniac* v. *Thompson*, 7 Peters' R. 361, and *Mackie* v. *Cairns*, 1 Hopk. Ch. 373. Now, it is evident, the confession of the judgment and the execution of the assignment were distinct and independent transactions. Mr. Bell says, he had no knowledge whatever of the judgment until after the assignment was made, and Mrs. Haswell avers, she knew of no intention to make an assignment, when the bond and warrant to confess judgment was executed to her. If, then, such a fraudulent intent as is now imputed to the assignors had existence, it is clear neither the judgment creditor nor assignee participated in it. There is, consequently, nothing in this feature of the case, to withdraw it from the general principles applicable to such assignments.

It is, secondly, urged that, as against the complainant, the assignment is void by force of the assignors' agreements that "Haswell, Barrington & Haswell would not give

[ Towar *v.* Barrington. ]

any judgment or other lien on their joint property or stock in trade, that would be prior or detrimental to the claim of the said Alexander Towar," or "that the said obligors would not assign, or in any way dispose of their stock or effects to any person or creditor in prejudice of said Towar, and that every such assignment or transfer should be void as to him." These agreements were carried in Mr. Towar's pockets for several years, in purposed secrecy, while the debtors were permitted to trade with the world as if they had been free men, unencumbered. During this interval the very debts which the assignment is intended to cover, were created, *bonâ fide*, in the usual course of business, with the ostensible owners of the stock and effects, now claimed to be exclusively applicable to the payment of Towar's debt. Surely, under these circumstances, such secret agreements ought not to be permitted to work an effect so unjust as that now claimed for them. Without precedent authority, I should be prepared to say, that setting them up after the lapse of years, in bar of innocent creditors, who acted in entire ignorance of them, more especially where it appears the secrecy was of set purpose to give the debtors a false credit, involves something so like fraud that no judge could give his sanction to it. But I am relieved from simple dependence on my own impressions by the principle, authoritatively settled, that a chancellor will never exercise his discretion in giving effect to executory agreements, in detriment of the rights of innocent third persons, without notice; a principle which is illustrated by *Orby* v. *Trigg*, 9 Mod. 2, 3, where a covenant to let a mortgagee have the estate in case it was to be sold, was not allowed to affect an intervening purchaser without notice. I refer to this case, because it is cited, with approbation, by the present chief justice, in an able opinion delivered by him in *The Insurance Company of North America* v. *The Union Canal Company*, 2 Penn. L. J. 65, (*ante*, 53) where, also, the principle I have noted was acted on. Though

[ Towar *v.* Barrington. ]

an assignor is a volunteer, and not a purchaser for value, yet he is, as was ruled in *Seal* v. *Duffy*, 4 Barr 274, a trustee for the creditors, and I see not why they may not enforce their rights, if they choose to do so, through him.

It is, however, further contended, that by the confession of judgment, and execution forthwith issued, the property had passed out of the debtors, and they had either, first, nothing to assign, the goods belonging to the sheriff by virtue of his levy; or, secondly, only the surplus, after payment of the amount of the judgment. The latter portion of this proposition has been already answered, at least in part, and this conveys, also, a partial answer to the first branch of the proposition. The bond and warrant to Mrs. Haswell, and the entry of judgment thereon, as already intimated, transferred no property in the debtors' goods and effects, subsequently assigned. The execution afterwards issued was the work of the creditor, not of the debtors. It is true, it operated to vest an interest in the sheriff, sufficient to enable him to pursue the goods levied, in the hands of a trespasser. But, until sold, the property of the judgment debtors was not wholly divested. It remained in them subject to the levy, and was at their disposal, burdened with the encumbrance. Upon payment of the execution or the withdrawal of the levy, the alienee holds the goods altogether free of the lien, and has a plenary property in them, by virtue of the transfer, without more. In fact, what is usually called property in the sheriff is a qualified interest, depending on the levy. That being gone, all semblance of property is gone with it. It results, then, in this; if the judgment and levy be good, the execution creditor has a claim upon the proceeds of the goods levied, superior to either the assignee or the plaintiff in the present proceeding. If the levy be withdrawn, or for any cause, be found insufficient, the property assigned passes to the assignee, free of encumbrance. Now the complainant avers the illegality of the levy, and if upon any ground advanced

[*Towar v.* Barrington.]

by him, which does not impute fraud to the assignee, it be set aside, it is difficult to perceive how the complainant can be permitted to set it up as sufficient to intercept the transfer of the property to the assignee, even if such were otherwise its legal effect. But, as already said, it works no such consequence. An execution and levy is entirely compatible with a continued property in the debtor, sufficient, at least, for every purpose of sale and transfer. There is nothing in *Seal* v. *Duffy* impeaching this view. That was the case of a fair assignment, good against the assignor and acquiescing creditors, to pass the property of the things assigned. It is upon this distinct ground that decision proceeds. The difference is, that here the levy does not pass the property.

From what has been said, it will be perceived I am of opinion the assignment to Bell is operative to vest the property assigned in the assignee, for the equal benefit of all the creditors. He will, consequently, so take unless the prior levy and a sale under it should be found sufficient to prevent this. It would seem, therefore, to be the business of the assignee, as the representative of all the creditors, to contest that levy, and he has, in fact, offered to do so, provided the now plaintiff, recognising the assignment as valid, desires it. The plaintiff declines the condition, under the idea that both the execution and assignment are void as to him. We have seen that, with regard to the assignment, this is an error. Yet I do not perceive why he may not be permitted to contest the first levy, as one having an interest under the assignment. But in doing so he must be regarded as standing upon the assignment, and claiming the benefit of its legal operation.

He attacks the judgment and execution on three distinct grounds. 1. As fraudulent in fact. 2. As fraudulent in law, under the statute of Elizabeth. 3. As being so under our several acts of assembly regulating this subject.

1. By the bill, it is averred the judgment was collusively

entered, and with a view to defeat creditors, no debt being, in fact, due to Mrs. Haswell. The answers and exhibits, however, fully disprove this allegation, and it is now abandoned. The averment of actual fraud is, therefore, left to rest solely on the fact that among the debts proposed to be secured by this judgment, there are two represented by the defendants themselves; one of these being due to George D. Haswell, as executor of the estate of John J. Haswell, deceased, and the other to Edmond Barrington, as administrator of the estate of Michael Connor. Now it is undoubtedly true that an attempt by a failing debtor to reserve an interest to himself, under colour of a transaction purporting to be for the benefit of his creditors, or any of them, avoids the whole transaction, whether this be by way of assignment or confession of judgment. This is the doctrine of *Irwin* v. *Keen*, 3 Wh. 247, and *Hart* v. *M'Farland*, 1 Harris 182. And it is based on the evidence afforded of an intention to commit an actual fraud. But there is no such feature, in the case before me. It is in uncontradicted evidence that the several sums for which the judgment is a security to Haswell & Barrington, were received by them in their respective characters of executor and administrator, and by them invested in the business of the firm of which they were members, the firm having full knowledge of that fact. Under such circumstances, I think, equity would follow the fund in the hands of the debtors, and if so, there is no rule which would prevent the debtor from securing it himself. But on another ground, this part of the transaction is sustainable. " It is a maxim, that where two rights meet in the same person, they are viewed as if they existed in different persons." *Allison* v. *Wilson*, 13 S. & R. 333; *Petrie* v. *Clark*, 11 S. & R. 377; *Depau* v. *Waddington*, 6 Wh. 220. The law treats them as distinct individuals. Now here were debts due from Barrington & Haswell, as traders, to Barrington & Haswell, respectively, in their

[ Towar *v.* Barrington. ]

distinctive characters of executor and administrator. In the latter capacity, they are to be regarded just as though they were other natural persons, and, fraud being out of the way, are entitled to stand as distinct creditors of failing debtors. There is nothing in the doctrine that a personal representative is vested with the personal chattels and *choses* in action of a decedent which militates against this. His representative character may always be averred, where justice and propriety require it, in a case situate like the present.

Secondly, the position that the judgment is fraudulent in law, under the statute of Elizabeth, is equally untenable. Neither at common law, nor under the statute, was there any principle which prohibited an insolvent man from preferring one creditor before another, by a confession of judgment, with a view to immediate execution. This was so held in *Blakey's Appeal,* 7 Barr 449, even after our act of 1843, forbidding preferences in assignments.

But, thirdly, the act of 16th April, 1849, contains a *proviso,* which, though most awkwardly constructed, admits of no other interpretation than the manifestation of an intent to prohibit even *bonâ fide* judgments and liens being acquired against the property of an insolvent debtor, with intent to give a preference over other creditors. This construction, it is true, is by implication, but it is a necessary one, and, therefore, as strong as though the language were direct.

Now, in the instance before me, though the defendants, Haswell & Barrington, deny by their answer, an intent to prefer the creditors named in the declaration of trust, signed by Mrs. Haswell, and aver that their object was, simply, to place those creditors on an equal footing with Towar; and the defendant, Mrs. Haswell, denies all knowledge of the debt due to Towar, when the bond was executed to her; I cannot shut my eyes upon the fact that when that bond was made, an immediate execution of the judgment to be entered upon it was in the contemplation

S

of all the parties to the transaction. True, this design may not have been imparted to the debtors in terms, but it is impossible to believe they did not expect it. In giving the judgment they may have been chiefly actuated by a desire to put their remaining creditors in a position as favourable as that occupied by Towar, holding warrants of attorney to confess judgments. They may not have intended to violate the provisions of the acts of 1843 and 1849, "*of which they had no knowledge.*" But they must have known that a first levy would give an advantage, and when they confessed a judgment, without stay of execution, omitting to give notice thereof to Towar, in violation of their written stipulation, it is incredible that they did not anticipate an execution, and the legal consequences which flow from a levy. Indeed, there is no attempt at a denial of this. The defendants merely say, that of their own motion, by the confession of the judgment, they did not place the general creditors in a better situation than that enjoyed by Towar; and that they had no intention to violate the acts, because they knew not of them. But if they contemplated putting it in the power of Mrs. Haswell, as the general representative of the other creditors, to steal a march upon Towar, or any other creditor, it is enough, though they never heard of the acts prohibiting it. It is so even on the concession that Mrs. Haswell knew nothing of Towar's debt, for under our acts an intent to prefer entertained by the debtor is enough. Without entering upon detail, it may be sufficient to say that looking to the whole transaction, and the circumstances that surround it, I have no doubt that the probability, nay, almost certainty, of an immediate execution was in the minds of the parties, and the effect of it well understood. That execution, as being the instrument of preference, is, therefore, within the purview of the act of 1849. To give due effect to that act, the writ must be restrained. Yet as this conclusion is only in favour of all

[Towar *v.* Barrington.]

the creditors represented by the assignee, the judgment representing at the same time all the creditors but Towar, the injunction against the execution will only be granted on condition that Towar also relinquish his execution and levy, and agree to come in under the assignment. This is the necessary result of the recognition of the assignment and of Towar's position in court, as one protected by it.

As all the parties are before me, presenting their conflicting rights, I am in possession of the whole subject, and may make such a decree as will quiet the controversy altogether. This can only be done by compelling all the creditors to come in under the assignment. An analogous case is where there has been a decree for the distribution of assets, in the hands of a trustee. There, a court of chancery will restrain a creditor, even though he be not a party to the suit, from proceeding at law for his own individual debt. This it does, because having taken the fund into its own hands, it will administer it equitably, and not permit the trustee to be pursued at law; and an injunction may be granted on the application of an executor, heir, legatee or creditor. This it does because it considers the decree in the nature of a judgment for all the creditors. *Martin* v. *Martin*, 1 Ves. 211; *Morrice* v. *Bank of England*, Cas. Temp. Talb. 217; 2 Bro. P. C. 465; *Dyer* v. *Kearsley*, 2 Mer. 482, n; *Brooks* v. *Reynolds*, 1 Bro. Ch. 183; 2 Swanst. 545; 3 Daniel's Ch. Pr. 298. Here, we have the assignment, in lieu of a decree, and equally efficacious; and the creditors to be restrained are parties before the court. It will be decreed accordingly.

And now, to wit, March 15th, 1851, the complainant, Alexander Towar, having filed a paper, agreeing that the writs of execution issued by him against the defendants, Barrington & Haswell, be set aside, and that the complaint against Thomas Bell be dismissed, and the assignment to said Bell, by the said Edmond Barrington and George D. Haswell be maintained and established; it is ordered and

[ Towar *v.* Barrington. ]

decreed, that the bill be dismissed, so far as regards the defendants, Edmond Barrington, George D. Haswell, and Thomas Bell, and that Mary Ann Haswell be enjoined and restrained from setting up or proceeding with the execution now outstanding upon her judgment against said Barrington & Haswell; and that the costs be paid by Thomas Bell out of the assigned estate.

The rule to set aside the execution was made absolute, upon the same terms as are contained in the foregoing decree.

# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.