Elizabeth N. Crumpton, Executrix of the Last Will and Testament of Herbert B. Crumpton, deceased, *v.* The Pittsburg Council, No. 117, of Junior Order of United American Mechanics of Allegheny County, Pa., a Corporation, Appellant.

*Benefit association—Notice of assessment—Forfeiture—Burden of proof.*

Where, under a claim for death benefit due from a benefit association, a forfeiture is set up in defense, the burden is upon the association to prove nonpayment of any dues and assessments on which default the forfeiture is based.

*Notice of assessments—Application of payments.*

Notice of death assessments must be brought home to a member in

order to subject him to forfeiture, and in default of such notice payment by him of a sum of money in excess of present liabilities to the association will be credited, according to the by-laws, to his weekly dues accruing thereafter; it cannot be applied to death assessments of which he had no notice and thus place him in arrears for his weekly dues.

*Corporations—By-laws foreign to scope of the company—Ultra vires.*

A by-law is ultra vires and void where it is clearly alien to the nature of the corporation and is a departure from the purposes set out in the charter.

Argued April 7, 1896. Appeal, No. 69, April T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1895, No. 169 on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affimed.

Assumpsit to recover death benefits. Before EWING, P. J. Verdict for plaintiff in the sum of $533.75.

The facts sufficiently appear from the charge of the court by EWING, P. J., as follows:

Gentlemen of the Jury:

This is a suit brought by the executrix of Herbert B. Crumpton, deceased, to recover a death benefit from the Pittsburg Council No. 117, Junior Order of American Mechanics of Allegheny County, of which council he was a member. No objection is made to the right of this plaintiff to recover, if any one is entitled to recover, and it is admitted by the pleadings that Herbert Crumpton was a charter member of this association, and that he died on the 25th day of June, 1894. It is not in dispute that as early as the 22d day of June the financial secretary of the association had received, and had in his hands, more money from the decedent than paid up all the dues owing by him at that time.

(The court here answered points presented by counsel for plaintiff and defendant.)

The association defends under certain provisions in its by-laws, which are contained, substantially, in sec. 4, art. 10, page 49, providing " That a brother, suffering himself to become indebted to the council for weekly dues for thirteen weeks, shall not become entitled to benefits for four weeks after all arrearages have been paid in full to the time of settlement," etc.

There are other provisions to the same effect. I think it occurs in three different places that are substantially the same thing; that is, that they shall not be entitled to sick benefits nor death benefits, if they are thirteen weeks in arrears until four weeks after payment. Counsel for plaintiff has asked me to say to you that that is void, as being an unreasonable requirement. We have declined to do so. While it is a stringent provision, and must be construed strictly against the association when it defends on it, nevertheless, unless the courts will sustain the by-laws of such beneficial associations, and the actions of the officers under them, requiring prompt payment of dues and assessments, such associations would be worthless to the sick, and to the relatives of the decedent, who are expected to be benefited by them. If they are not pretty rigid, and not allowed to enforce stringent rules, the finances would run down, and the concern would break up, and for that reason we have declined to say that it is unreasonable. The trustees and the officers owe a duty to others, not to allow payments to be made to those who are not entitled to them.

Now this deceased brother had, apparently, been in good standing. It is said he had been in bad health for a considerable time, and some of the officers knew it, but there is no evidence of any official notice to the body that he was so sick as to require sick benefits, and no request was made for them, so far as appears. On the 9th of November, 1893, a notice was sent to him that his dues up to that date, and it includes that date, amounted to $3.10. Some time after that he sent them $5.00, which they received (it is not very important when it was sent; it is credited on the books as of December 7, and may have been paid nearly two weeks before that, according to the testimony). It is admitted that that not only paid up all his dues, but left a balance of $1.90 in his favor, and in four weeks after that payment he was entitled to sick benefits, or to death benefits, or whatever might be due to a member in good standing, who had paid up all his dues. Now the weekly dues are ten cents, payable weekly. As I understand the rules of the association, that would pay the weekly dues for nineteen weeks after the 9th of November, and, if there was nothing else for which it should be appropriated, it would run the payments to Thursday evening, the 22d of March. The defendants allege

that there was more than the weekly dues came in; they say there were two deaths occurred in November, and that one of them must have been included in this notice of $3.10, and the other was not.

By Mr. Wilson: Two deaths in that quarter.

By the Court: Well, in that quarter, and that the assessment for a death benefit is $1.00 on each member for each death. The testimony is that it has never been the custom to make a formal motion, or have a formal resolution passed assessing that benefit, but the officers, after the death of a member, simply charge it up to each member, and he is notified of it or ought to be. Now, I am not inclined to think that it is absolutely necessary that there should be such a resolution making assessments, although I think the passing of a resolution would be a safe precaution, but, unless Mr. Crumpton had notice of this death, and of this assessment, he had a right to assume that his $1.90 was going to pay his weekly dues for nineteen weeks. Now let us see whether he had such notice. All the testimony there is on the subject is that of the financial secretary, who says that he is in the habit of sending out notices of assessments to members. He does not testify to any recollection of sending one to Mr. Crumpton, and he has no record of it. It is perhaps sufficient to submit to you, and I will do so, and you can say whether or not that is evidence, from which you can assume that Mr. Crumpton had actual notice of an assessment for the death of Mr. Cooper or the other member who died in that quarter, ending the 31st of December. I will simply say that I would not find that he had notice, and, if he had no notice, then, so far as this question of forfeiture of his rights by being thirteen weeks in arrears is concerned, he had a right to assume that his dues were paid up to the 22d of March, and that the arrears would not begin to run again until the 29th of March, when there would be ten cents due.

There is a provision in the by-laws by which they agree to assess (and it is an assessment; it is not like the weekly dues; they are payable without assessment), but they agree to assess ten cents a quarter on each member to give to some association that is undertaking to make changes in the United States laws to prevent immigration. That may be a very good object, but

it is foreign to the purposes for which this association was ostensibly chartered. The purposes as chartered are, " To promote the interests of American mechanics by assisting them in obtaining employment, and encouraging them in business, and the establishing of a sick and funeral fund by contributions made to said fund by members of this corporation." Now, I do not think that the contribution to an association to promote legislation of that kind is within the objects contemplated in this charter, and therefore that would not be a valid assessment, and you leave that out.

Now, unless you find he had actual notice of this assessment for the death benefit, not included in his notice of November 9, then you have his weekly dues paid up to and including the 22d of March, and the thirteen weeks would not expire, in accordance with the by-laws, until after the adjournment of the session of the council on the 21st of June, and under the by-laws it meets at 7:30 P. M. Now, it is in evidence that a notice was received by Mr. Crumpton before his death : the precise time does not appear, but it is stated, I think, as the 14th or 15th of June—that on the 28th there would be due for a previous quarter $1.40, and due for the quarter ending June 28 $1.40, which would be the weekly dues, and ten cents for each quarter for this contribution to secure legislation. The decedent gave to his sister, the plaintiff, $5.00 to send in pursuance of that notice. She put it in an envelope, inclosing the notice with it, and mailed it to the council, to the post office box where, in the previous notice, he had been directed to send payments. Now it is admitted that the $5.00 was received, and that it more than paid all the claims. The financial secretary says he got it out of the post-office on the 22d of June. Miss Crumpton thinks she gave it to her niece to mail on the 16th. She says it was the day on which she wrote a check for her brother, and the check is dated the 16th,— she is not certain about it. She gave it to her niece, who says she mailed a letter for her about that time, but she cannot tell where. The decedent lived in Pittsburg, and the letter is mailed from Allegheny. The date at which it is mailed from Allegheny is not on the envelope, but the hour is 2:30. If there was no other date you might probably find that it had been mailed on the 16th or 17th, but, in due course of business,

according to the testimony brought in by the plaintiff, if it was mailed at 2:30 in Allegheny, it would leave Allegheny for Pittsburg about 3:05, and ought to arrive before 4 o'clock at the Pittsburg post office, and on the back of it is the stamp of the receipt at the Pittsburg post office at 4 o'clock on June 21; you cannot presume it was received earlier than that, and the post office clerk, who was in charge of that business, says it would be in the box within fifteen minutes of that time.

Now, there is evidence from which you can fairly find that this organization had a private box in the post office to which they could go and get the mail, and there is also evidence in regard to the course of business and the large amount of business transacted by mail, and if you find that to send by mail was authorized by the association, and that a letter containing $5.00, although received by Mr. Lewis, the financial secretary, on the 22d, was put in the post office, and put in the private box of the defendant before the meeting at 7:30, or in time for them to have easily gotten it and have it at the meeting, it is a payment of the $5.00 at that time, and it would be in time, because the thirteen weeks was not ended until the adjournment of the meeting that night. The financial secretary says it is not considered received by the association until it is paid over at the meeting. The by-laws provide specifically for payment to the financial secretary, and when it is paid to him or put in his control, it is a payment to the association. I can understand very well how, at each meeting, the financial secretary who receives the money reports it as of that date. While probably he ought to keep a private memorandum, showing when he received it, yet, for the purposes of the association, it is sufficient, I think, that he report it on the meeting night.

Now you will have to find the facts in the case. [While there is not much room for dispute in the facts, in my judgment, yet the court cannot find the specific facts. The burden is on the defendant to make out its case—to show that this brother was in arrears for thirteen weeks within four weeks of the time of his death. He was not in arrears at the time of his death; it was all paid up, and more than paid up. The death benefit is admitted to be $500, and I suppose, if you find for the plaintiff, you would find that amount with interest from the time this suit was brought, which was October 25, 1894.] [5]

*Errors assigned* were, (1, 2) error in refusing to affirm defendant's 1st and 2d points, which points and answers thereto were as follows:

1. That specific notice was not necessary of a member's death and consequent assessment. *Answer:* The first point is affirmed as between the association and the member as a question of debt, but before the member can be considered in default he must have had notice of the assessment.

2. That the mailing of notices to the members of the death and assessment of a deceased member was all that was necessary. *Answer:* The second point is affirmed with the same qualification contained in answer to the first point.

(3, 4) Error in affirming plaintiff's 2d and 7th points, which points are as follows:

2. That the said Herbert B. Crumpton had a right to presume that in paying five dollars ($5.00) in obedience to the notice contained in said letter of November 9, 1893, the additional $1.90 would be applied to the payment of weekly dues accruing thereafter at the rate of ten (10) cents per week rather than to assessments accruing thereafter of which he had no notice.

7. That section 2, article 5, of the by-laws, which reads as follows,—" Each contributing member shall be assessed ten cents additional every three months, which amount shall be forwarded quarterly to the American Defense Association to aid in their endeavor to secure legislation restricting immigration," is ultra vires and void.

(5) Error in a portion of the charge, reciting same.

*D.F.Patterson*, with him *James F. Porte*, for appellant.

*John Wilson*, with him *George H. Rankin*, for appellee.—By-law is clearly ultra vires: Taylor v. Griswold, 14 N. J. L. 227; Com. v. Gill, 3 Whart. 228. The powers of a corporation are derived from the law. They cannot be enlarged by any act of the corporate body: Andrews v. Ins. Co., 37 Me. 256. Before forfeiture can be claimed by reason of nonpayment of any assessments it must be shown that the plaintiff was notified thereof in some reasonable way: Siebert v. Chosen Friends, 23 Mo. App. 268; Payne v. Mutual Relief Soc., 17 Add., N. C. 53; Supreme Lodge K. of H. v. Johnson, 78 Ind. 110; Colum-

bia Ins. Co. v. Buckley, 83 Pa. 298; Sinking Spring Mut. Ins.
Co. v. Hoff, 2 W. N. C. 41; Mutual Reserve Fund Life Assn.
v. Hamlin, 139 U. S. 297.

No forfeiture can be declared for the nonpayment of an
assessment where the notice is insufficient: Niblock on Ben.
Societies, sec. 268.

" If by reason of a member's conduct or failure to comply with
the regulations or requirements of the society, the member has
lost his good standing, the society must show this fact, for status
once fixed is supposed to continue until the contrary is shown,
the fact is one of defense and is peculiarly within its knowledge:
Supreme Lodge K. of H. v. Johnson, 78 Ind. 110; Mulvey v.
Supreme Lodge K. of H., 28 Mo. App. 463; Quigley v. Mut.
Aid. Society, 1 McGloin (La.), 284; Carlile v. Wood, 63 Mo.
501; Anslyn v. Franke, 11 Mo. App. 598.

OPINION BY WILLARD, J., May 11, 1896:

The Pittsburg Council No. 117 Junior Order of United
American Mechanics of Allegheny County was chartered Sep-
tember 3, 1889.

The object of the association, as stated in its charter, is " to
maintain and promote the interests of American mechanics by
assisting them in obtaining employment and encouraging them
in business; and establishing a sick and funeral fund from con-
tributions made to said fund by members of this corporation."

In considering questions growing out of organizations of
this character and when the rights of individual members of
the corporation are involved, courts of justice should exercise
the utmost care in determining conflicting claims between mem-
bers and the organization to which they belong.

That the learned judge in the court below realized this duty
and fearlessly and impartially performed it is fully demon-
strated by an examination of the record. We might rest this
case and affirm it on the charge of the learned trial judge but
the specifications of error raise questions which it is our duty
to notice. The facts of the case are fully stated and analyzed
in the charge of the court below and it is unnecessary for us
to restate them.

While the by-laws provided that at the death of a member
entitled to benefit, the other members should each be assessed

the sum of $1.00, which if not paid within thirty days should be charged up, they did not provide specifically for any notice to the members of any particular assessment. It was proved that the secretary of this council did send notices of such assessment and such was his custom. It was claimed by the appellant that a death had occurred and an assessment made therefor which was charged up to the account of Herbert B. Crumpton, thus making him in arrears at the time of his death so as to deprive his executrix of any right to the death benefit fund. There was no evidence that any notice of this assessment was ever sent to or received by Mr. Crumpton. The appellant asked the court to charge that specific notice was not necessary of a member's death and a consequent assessment. This the court refused to do so far as it affected the forfeiture of Mr. Crumpton's membership, for the very good reason that no man shall be deprived of his rights without due notice of the reason therefor. It further appeared as before stated that it was the custom of the secretary to send notices of these death assessments as they occurred. It was said by Chief Justice THOMPSON in Helme v. Phila. Life Ins. Co., 61 Pa. 110, " If it was the practice of the company to notify the plaintiff of the times her premiums were due and payable, and omitted on the occasion of the default ; or if they so dealt with her as to induce a belief that the clause of forfeiture would not be insisted on in her case . . . . and thus put her off her guard they ought not to be permitted to take advantage of a default which they may themselves have encouraged." We think the first assignment of error is without merit and it is overruled.

In considering the second assignment of error we have carefully examined the testimony for evidence of the mailing of a notice of the death of the member evidently referred to, and have failed to discover it. The only notice referred to in the testimony of Mr. D. J. Lewis is that of November 9, 1893, and he swears that he does not know whether that letter included the notice of the death assessment of Mr. Cooper or not. The court was asked to charge that the mailing of notices to the members of the death and assessment of a deceased member was all that was necessary. The court affirmed the point with the qualification that before the member can be considered in

default he must have had notice of the assessment. Under the evidence the answer to the point was properly qualified and the second assignment of error must be overruled.

On the 9th day of November, 1893, Mr. Crumpton was notified that he was indebted to the council in the sum of $3.10. Soon after that he sent to the council $5.00 and had a credit of $1.90 standing to his account, and was clearly entitled to have it applied to the payment of the weekly dues in·the absence of any notice from the council of any death assessments, which he had a right to expect if any such had been levied from the custom of the secretary to send such notices. The court was asked by the plaintiff to charge the jury that Mr. Crumpton, in the absence of any notice of any other claim, had a right to rely upon the application of the money standing to his credit, to the payment of his dues. The point was affirmed and the appellant has assigned the affirmation of this point for error in its third assignment. It was vital to the rights of Mr. Crumpton whether the money to his credit should be applied to the payment of his dues which would leave him in good standing up to and including March 22, 1894; or whether he should be deprived of his good standing by the charge of a death assessment against his account, of which he had no knowledge or notice. The third assignment is overruled.

The fourth assignment involves the construction of a by-law of the council which reads, viz: "Each contributing member shall be assessed ten cents additional, every three months, which amount shall be forwarded quarterly to the American Defense Association to aid them in their endeavor to secure legislation restricting immigration." It is apparent from the language of this by-law that it is foreign to the purposes of this council as expressed and set forth in its charter, and they had no right to pass any such by-law or to charge any member's account with contributions levied under its provisions. If the subject-matter of a by-law is clearly alien to the nature of a corporation and is a departure from the purpose, such a by-law is ultra vires, and void: People v. Chicago Board of Trade, 43 Ill. 119; Taylor v. Griswold, 14 N. J. L. 227; Commonwealth v. Gill, 3 Wharton, 228.

In the fifth assignment of error complaint is made 'of the language of the court in the closing part of the charge to the

jury. We are of the opinion that the facts in this case fully warranted what was said by the learned judge. The executrix of the deceased member, in attempting to recover the death benefit provided for, made out her case when she proved the two $5.00 payments mentioned in the testimony and which it was not disputed was received by the financial secretary of the council. The appellant attempted to prove a forfeiture of the policy on account of the nonpayment of dues and it was certainly incumbent upon them to prove the nonpayment and consequent forfeiture, and the learned judge was clearly right in instructing the jury that the burden was upon the appellant to make out its case and to show that the member was in arrears for thirteen weeks within four weeks of the time of his death; the learned judge told the jury that the member was not in arrears at the time of his death; that it was all paid up, and more than paid up, and he was fully warranted in so doing, according to the testimony. Before there was a forfeiture, just previous to the death of the member and within the time to save his membership, his sister, acting for him, mailed and had delivered in the private box of the council in the city of Pittsburg, more than enough funds to pay his alleged arrearages; and further the financial secretary received the funds so sent and delivered as the financial officer of the council, which he never returned to the member before his decease or to the executrix of his will after that time. The money was at the place designated before the expiration of the thirteen weeks; because the financial secretary did not take it out of the post office box was no fault of the member.

This case hinged upon two questions of fact, both of which were fairly submitted to the jury, and by their verdict they have found that Herbert B. Crumpton at the time of his death was in good standing and that the plaintiff in this case is entitled to the benefit fund sued for. The judgment is affirmed.